ELI P. MILLER et al., Respondents, *v.* THE EDISON ELECTRIC ILLUMINATING COMPANY OF NEW YORK, Appellant.

1. EQUITY — WHEN COURT UPON DENIAL OF EQUITABLE RELIEF, MAY RETAIN JURISDICTION AND DETERMINE WHETHER DAMAGES SHOULD BE AWARDED. A court of equity, which has obtained jurisdiction of an action brought by a land owner to restrain the continuance of a nuisance, and for damages, alleged to be caused by the maintenance and operation of a plant for the production of electric light and power, may retain the case, although it is found that the nuisance was abated at the time of the trial and that it was improbable that any would be created in the future, and may determine whether the plaintiff is entitled to any damages.

2. RIGHT TO TRIAL BY JURY. The denial of equitable relief in an action brought to restrain the continuance of a nuisance and to recover the damages sustained, does not make the action triable, as of right, by a jury.

3. LANDLORD AND TENANT — INJURY TO ENJOYMENT AND OCCUPATION OF LEASED PREMISES — TENANT, NOT LANDLORD, MAY RECOVER DAMAGES THEREFOR. Where it appears, upon the trial of an action to restrain a nuisance and for damages caused thereby, that the alleged nuisance was caused by the maintenance and operation of an electric light and power plant by the defendant; that, after the erection of such plant, the plaintiff's premises were leased for a term of years; that, at the expiration of such term, they were leased to the same tenant for another term at a reduced rent; that, at the expiration of this term, they were again leased to the same tenant and at a still lower rent; and it is found by the trial court that, as the electric plant was operated at the time of the trial, no injury was being done to plaintiff's premises and that none was likely to be done in the future; that no damage was suffered by the plaintiff after the beginning of the last lease and although the rental reserved in that lease was less than that for the preceding lease, the difference could be accounted for otherwise than by charging it to the defendant's acts, so that, in effect, the only injury which had been caused by the operation of the electric plant was to the enjoyment and occupation of plaintiffs' premises and was not of a permanent character, — the plaintiffs cannot recover for any depreciation in the rental value, since a tenant under a lease, made during the existence of a nuisance, is entitled to recover the depreciation of the value of the occupation of the premises, and the defendant cannot be subjected to a double recovery for the same injury.

*Miller* v. *Edison El. Illuminating Co.*, 97 App. Div. 638, reversed.

(Submitted December 12, 1905; decided February 6, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered

2

October 29, 1904, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The plaintiffs, by the institution of this action, have sought to restrain the defendant from continuing a nuisance, created through the maintenance and operation of a plant for the supply of electric light and power, whereby their property in neighboring dwelling houses has been injuriously affected. They, further, demanded judgment for damages already sustained. The property was in the occupancy of a tenant, holding under a lease by the plaintiffs. The trial court formulated its decision in findings of facts and conclusions of law, and the judgment recovered by the plaintiffs thereupon was affirmed by the Appellate Division. The facts found, so far as they need to be mentioned, show that the plaintiffs became the owners of the premises in question some years prior to 1888; in which year the defendant constructed, upon premises adjacent to those of the plaintiffs, a power house, equipped with machinery and appliances necessary for the purpose of generating electricity to be supplied to the public for lighting, or for power. In 1890, the plaintiffs leased their property for a term of five years; receiving a rental of $15,000 a year and certain privileges. Shortly prior to the expiration of the term of this lease, the premises were again leased to the same tenant for another term of five years from May 1, 1895, at the rental of $12,000 a year, with the reservation of the same privileges as in the previous lease. In 1900, the premises were, again, leased at a less rental, with the reservation of some additional privileges, and with a right to the lessors to share in the profits of the hotel business conducted by the lessee. After the construction of its power house, the defendant's operations caused "soot, cinders, ashes, steam, or water condensing from steam," to be discharged upon plaintiffs' premises. Noises, jars and vibrations resulted from the operation of the machinery, which impaired the peaceful enjoyment of the premises and affected their rental value. The court, further, found that, as the machinery was used at the time of the trial, no injury was being worked to the plaintiffs' property

and "that it was improbable that it would be so used as to work injury in the future;" but that, as the plaintiffs were entitled to the equitable relief prayed for when the action was commenced, the court would retain the case and award to them their damages. Judgment was directed for the plaintiffs for such damages, in the amount of $4,500. The court decided that the plaintiffs failed to establish that they suffered any damage after the year 1900 and, though the rental for the premises, reserved to them in the new lease of that year, was less than that for the prior term, the difference could be accounted for otherwise than by charging it to the defendant's acts. This was explained, in the changed character of the locality and in the fact that the lease, not only, provided that the plaintiffs should have a share of the profits, but that they should enjoy greater privileges than formerly. These findings of the trial court have sufficient support in the evidence.

*Samuel A. Beardsley* and *Henry J. Hemmens* for appellant. The damages caused by the alleged nuisance, if any, were temporary in their nature and belong to the tenant and not to the landlord. (*Bly* v. *E. E. T. Co.*, 172 N. Y. 1; *Bates* v. *Holbrook*, 89 App. Div. 548; *Pritchard* v. *E. E. T. Co.*, 179 N. Y. 364; *Francis* v. *Schoelkopp*, 53 N. Y. 152; *Hine* v. *N. Y. E. R. R. Co.*, 128 N. Y. 571.) The court below found that the evidence did not warrant equitable relief. The complaint, therefore, should have been dismissed. (*Peck* v. *Goodberlett*, 109 N. Y. 180.) The motion to strike the case from the Special Term calendar and send it to a jury for trial should have been granted for the reason that the plaintiffs were not entitled to an injunction at the time of the trial, and the defendant was entitled to a trial by jury as a matter of right on the question of damages. *M(cNulty* v. *M. M. E. L. Co.*, 172 N. Y. 410; *Tucker* v. *E. E. Il. Co.* 100 App. Div. 407; *Miller* v. *E. E. Il. Co.*, 78 App. Div. 390; *Hudson* v. *Caryl*, 44 N. Y. 552; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 105 N. Y. 319; *Dorr* v. *D. L. Co.*, 18 Hun, 274; *People* v. *M. T. Co.*, 31 Hun, 596; *Lefrois* v.

*County of Monroe,* 88 Hun, 109; *Bohan* v. *P. J. G. L. Co.,* 122 N. Y. 18; *Parker* v. *Laney,* 58 N. Y. 469.)

*Frank M. Hardenbrook* for respondents. The damages awarded belonged properly to the plaintiffs. (*Kernochan* v. *M. Ry. Co.,* 161 N. Y. 345; *Hine* v. *N. Y. E. R. R. Co.,* 128 N. Y. 574.) The Special Term had jurisdiction to try the action. (*Miller* v. *E. E. Il. Co.,* 78 App. Div. 390; *Crane* v. *Bennett,* 177 N. Y. 111; *Stokes* v. *Stokes,* 155 N. Y. 581; *Roberson* v. *R. F. B. Co.,* 171 N. Y. 538; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.,* 105 N. Y. 319; *Lynch* v. *El. R. R. Co.,* 129 N. Y. 274.)

CULLEN, Ch. J. I adopt Judge GRAY's statement of facts and I agree with him in the position that this action was properly brought in equity; that it was triable by the court, and that the defendant was not entitled to a jury trial as of right. I am unable, however, to concur in the view that the plaintiffs were properly awarded damages for diminution in the rental value of the property. The plaintiffs were in possession of the premises during no part of the period for which damages have been recovered, but the same were in the occupation of their tenants under a lease for a term of years. One of these leases expired during the existence of the nuisance, and, as the trial court has found, by reason of the nuisance the plaintiffs were compelled to rent the premises for a new term at a reduced rent. It is for this loss of rent that damages have been awarded. The question as to which party, the landlord or his tenant, is entitled to recover for depreciation of the rental value by the existence of a nuisance has involved the courts in much perplexity. In the elevated railroad cases it has been settled that in the case of a lease made after the erection and operation of the railroad the landlord, not the tenant, is entitled to recover for such depreciation. (*Kernochan* v. *N. Y. Elevated R. R. Co.,* 128 N. Y. 559.) In the *Kernochan* case there is an elaborate discussion of the question by Chief Judge ANDREWS. A careful analysis of

the opinion of the learned judge will show that the decision proceeded on the ground that the elevated road was a permanent structure and intended to be so maintained ; that it was constructed in the street under legislative authority, and that as ample authority was granted to condemn any property rights on which it might trespass, the lessor had "no absolute remedy to compel the removal of the structure, since the right of condemnation can at any time be exercised by the defendants." The learned judge said : "It is also a necessary deduction from the circumstances attending the making of ordinary leases of improved property, executed after the construction of the elevated railroad, that the right to recover damages is vested exclusively in the lessor." To the doctrine of that case the court has steadily adhered. When, however, the doctrine was invoked to defeat the right of a tenant to recover damages against the present defendant for the very same acts which constitute a nuisance in the case now before us, it was held that the rule in the elevated railroad cases did not apply. In *Bly* v. *Edison Electric Ill. Co.*, a tenant, hiring after the nuisance was created, recovered the depreciation in the rental value of the premises. The Appellate Division, citing the authority of the *Kernochan* case, reduced the award to a nominal sum, holding that the tenant was not entitled to recover diminution in rental value. (54 App. Div. 427.) On appeal to this court the judgment of the Appellate Division was reversed, though a new trial was ordered because the trial court had awarded damages for a period anterior to six years before the commencement of the action. (172 N. Y. 1.) This court said, per WERNER, J. : "We think the *Kernochan* case has no application to a case like the one at bar, and this without reference to the fact that it appears affirmatively that the rental paid by the plaintiff was the same during the existence of the nuisance as it was before. The elevated railroad cases, to which class the *Kernochan* case belongs, are *sui generis*. They are governed by principles which apply to no other class of cases." The elaborate discussion of the question by Judge WERNER leaves nothing to

be now added.   It is sufficient to say that that case expressly held that a tenant under a lease made during the existence of the nuisance was entitled to recover the depreciation of the value of the occupation of the premises.

It is said to be the settled rule of law "that where the wrongful act affects different interests in the same property the owner of each interest may have his separate action against the wrongdoer.   Landlord and tenant have separate assets, and each, if injured therein, may have redress, the one for the injury to the reversion, the other for the injury inflicted in diminishing his enjoyment of the premises."   This statement is doubtless correct, but under this rule "to entitle a reversioner to maintain an action, the injury must be necessarily of a permanent character, and that a presumed intention to continue the nuisance is not sufficient, even where there is evidence that the premises would sell for less if the nuisance were continued."   (*Mott* v. *Shoolbred*, opinion of Sir GEORGE JESSEL, M. R., L. R. [20 Eq. Cas.] 22; see also cases cited in Judge WERNER's opinion.)   Here the only injury found by the trial court is to the enjoyment and occupation of the premises.   That does not affect the reversioner.   Had the trial court found that the operation of defendant's light plant cracked the walls or injured the structure, such damage would be of a permanent character and the reversioner entitled to recover. In the present case, however, not only is there no permanent injury to the plaintiffs' buildings, but the defendant's plant did not constitute the nuisance, but its operation, and such operation was not necessarily or inherently injurious because the trial court found that at the time of the trial its operation did not damage the plaintiffs.   Judge ANDREWS said in the *Kernochan* case: "We should be very reluctant to make a decision which would expose the defendants to a double action in cases like this," and I imagine that the reluctance still continues.   Nevertheless if the judgment before us is affirmed the defendant will be subjected to a double recovery against it, for under the *Bly* case the tenant is also entitled to recover, if in fact he has not already recovered, the diminu-

tion in the rental value during the same period for which the plaintiffs are awarded damages for such diminution. It is not a case like that suggested where the same act has caused injury to different persons and each recovers for the injury to himself; but here two parties will recover for exactly the same injury. I may suggest this further distinction between the elevated railroad cases and that of a casual temporary nuisance. In the *Kernochan* case the defendant upon satisfactorily compensating the landlord could continue the operation of its road despite the complaint of the tenant. Here, no release from, or settlement with, the landlord could have prevented the tenant from restraining the operation of the defendant's plant. Moreover, the lease by the plaintiffs was for a term of years. The right of the tenant and landlord then became fixed and the damage to the plaintiffs at once. It was the diminished rent during the demised term. Had the defendant ceased the operation of its plant the day after the lease, the plaintiffs' injury would have been as great as if it had maintained the operation during the whole demised term. Yet I apprehend no one will contend that the defendant would have been liable for the whole period. But if we should assume that such a contention would be well founded the result would be that the day after the lease the operation of the plant might be stopped at the suit of the tenant and yet the defendant remain liable to the landlord for the loss of rent for the whole term of the lease. In other words the defendant's liability would depend not on the injury done by its trespass or nuisance, but on the manner in which the owner might deal with his property. The decision in the *Bly* case did not pass this court without discussion. On the contrary there was a vigorous dissent by Judge HAIGHT (concurred in by two other members of the court), who contended that the loss in rental value went to the landlord, not to the tenant. The force of this position was appreciated by the majority of the court which, when it decided that the tenant could recover for that loss, substantially decided that the landlord could not.

I think the judgment should be reversed and a new trial granted, costs to abide event.

Gray, J. (dissenting). In my opinion, the right of the plaintiffs to bring and maintain this action is clear and the defendant's appeal should not be sustained. The plaintiffs were shown to have been injured by the defendant's acts, in the depreciation of the value of the property, as shown by the diminished amount of the rent for the premises reserved by the lease of 1895. For the prior term of five years from 1890, they had been receiving $15,000 a year as rent; while, for the succeeding term of five years from 1895, they were to receive only $12,000 a year. That represented a total loss to the owner of $15,000 for the new term and furnished a basis of injury, upon which this action was commenced in 1898.

I consider it to be a settled rule of law that, where the wrongful act affects different interests in the same property, the owner of each interest may have his separate action against the wrongdoer. Lessor and tenant have separate estates and each, if injured therein, may have redress; the one for the injury to the reversion, the other for the injury inflicted in diminishing his enjoyment of the premises. This rule and its reason have been, heretofore, discussed with such care, that I deem it necessary, only, to refer to the recent cases of *Kernochan* v. *N. Y. Elevated R. R. Co.*, (128 N. Y. 559), *Hine* v. *Same*, (Ib. 571), *Kernochan* v. *Manhattan Ry. Co.*, (161 ib. 345), and *Bly* v. *Edison Electric Ill. Co.*, (172 ib. 1). If it be a nuisance, which is the subject of complaint as injuring adjacent property interests, the question is, when the owner not in possession sues, whether it has diminished the rental value of his property; the difference in that respect being the measure of his right to damages. When the tenant sues, his right to recover rests upon the ground that his occupancy is disturbed and the full enjoyment of his possession of the premises is prevented by the common nuisance. (*Francis* v. *Schoellkopf*, 53 N. Y. 152; *Hine* v. *N. Y. Elev. R. R. Co.*, *supra*; *Bly* v. *Edison Electric*

*Ill. Co., supra.*) In the *Bly* case the question discussed was that of the tenant's right to maintain an action to abate a nuisance and for damages, when in under a lease made during the existence of the nuisance. It was held, upon a careful review of the authorities, in effect, that, as there was no justification for the maintenance of that which was a nuisance and, hence, an unreasonable and a wrongful use by the defendant of its property, the tenant of the property injuriously affected was not deprived of the right to bring an action by reason of having acquired the lease thereof, during the existence of the nuisance, at a diminished rental. The right to have compensation for injuries actually sustained and to have the nuisance abated could not thereby be affected. It was upon that proposition that the judges of this court divided in opinion. As to the right of the owner of property, though not in possession, to maintain an action to restrain the continuance of a nuisance, which threatens injury to his reversionary rights, and to recover for any damage which he may be able to show that he has already sustained in that respect, I think there should be no doubt. It is argued that, as the nuisance arises from the method of defendant's operation of the power house, presumptively, it is but casual and temporary. That is to say, though the defendant's building and mechanical plant were permanent structures, the operation of the machinery in a way intolerable and injurious to others, as complained of, would not be presumed to continue. Assuming the correctness of the proposition, how does it affect the principle upon which the legal right of the plaintiffs was founded? They, certainly, had the right to protect their reversionary interest against injury. A casual, or temporary, trespass, or nuisance, if the latter is of a casual nature, it is true, usually affects the possession of the property and, therefore, gives a right of action to the lessee. But for a wrongful act, which diminishes the rental value of the property, and which, from the circumstances, may, fairly, be regarded as likely to continue, whether it be in the nature of a trespass, or of a nuisance, an action will lie by a reversioner to redress the wrong; although

the lessee may, equally, have his action to redress the wrong inflicted upon his right to peaceable and comfortable. possession. (See *Kernochan Case*, 128 N. Y. 559, 566, and the English cases cited in the opinion; as well as the *Bly Case*, *supra.*) In this case the rental value of the plaintiffs' property, when the second lease was made in 1895, was diminished to the extent of $3,000 a year, under conditions of lease similar to those of the preceding, and, according to the findings of the trial court, the damage to the plaintiffs from defendant's operations, only, ceased to be inflicted in 1900. Thus, the defendant's use of its power house, in a way injurious to others, had continued for many years after its construction. It had so seriously affected the rental value of the plaintiffs' property as to compel them to accept a reduced rental in 1895 for a further term and when this action was commenced, in 1898, the threat in the situation was the same. However, technically, the nuisance may be termed casual, as caused by the methods of the defendant in operating its power house, it was a very real menace to the plaintiffs' interests as property owners. The case, in my judgment, came within the established rule which allows an action to a lessor, whose reversion is injuriously affected, to abate the nuisance, by restraining its continuance. To say that the nuisance was a casual, or a temporary, one is an answer no more satisfactory, than it is complete, legally, to the statement of the owners that they had suffered injury in the past by its maintenance and would suffer in the future unless it was restrained.

It is, further, argued that as the plaintiffs failed to make good their ground to equitable relief, by proving that the nuisance continued to exist at the time of the trial, the court should not have retained the action, but should have dismissed the complaint. It is, however, well settled that when a court of equity has gained jurisdiction of a cause, its jurisdiction is not affected by subsequent changes in the situation of the parties, if any cause of action survives; it may retain the case generally to do complete justice between them, by awarding that measure of relief for the injury done which

the case admits. The jurisdiction depended upon the situation at the commencement of the suit, with respect to the right to equitable procedure and relief; but the measure of the relief would be regulated by the situation at the time of pronouncing the decree. (*Lynch* v. *Metr. E. R. Co.*, 129 N. Y. 274; *Van Allen* v. *N. Y. El. R. R. Co.*, 144 ib. 174; *Van Rensselaer* v. *Van Rensselaer*, 113 ib. 207; *Madison Av. Baptist Church* v. *Oliver Street Baptist Church*, 73 ib. 82.) The trial court, therefore, committed no error in retaining the cause for the purpose of awarding damages.

Nor was the action triable, as of right, by a jury. It was not originally; nor was it so upon the denial of the equitable relief. The Code provides for a jury trial where the action is, simply, for a nuisance, (§ 968); but this action was brought for equitable relief to restrain the continuance of a nuisance, as well as to recover the damages occasioned. It was like the action of *Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, (105 N. Y. 319); where the distinction was pointed out between a common-law action for damages and the abatement of the nuisance, as in *Hudson* v. *Caryl*, (44 N. Y. 553), and an action where relief by way of injunction was asked.

This case is materially different from that of *McNulty* v. *Mt. Morris El. Light Co.*, (172 N. Y. 410); for, there, the plaintiff, after the commencement of his action and before the trial, had ceased to be a tenant of the premises and had removed therefrom. Hence, when the trial came on, he had no interest, or estate, in the premises, as to which he was entitled to ask for any equitable relief. He had no ground upon which to demand of the court anything but a judgment for the damages, which he had sustained from the nuisance complained of while he had been a tenant. As Judge PARKER observed, in the prevailing opinion in that case, " before the cause was reached for trial, plaintiff had passed out of possession of the property, thus parting with the right to the injunction and there remained to him only his claim for damages." In this case the plaintiffs had, in no sense, changed their position. They came to the trial with their demand for an injunction based

upon evidence, showing that the further lease, made in 1900 for a term of five years, was for a lesser rental; that the defendant's building still stood there, with all its powerful machinery, and that jarring and vibration still existed, though not as frequently as had previously been the case. With the plant there, as a permanent structure and with capacity to injure the tenants of adjacent dwellings, the plaintiffs had the right to insist upon their apprehensions of injury to the rental value of their property, unless the acts complained of were permanently restrained. The trial court, however, would not take that view of the evidence and decided that "it was improbable that it, (the power house), would be so used as to work injury in the future, except, perhaps, in case of emergency and then only for a limited time." I do not think the court could, justly, say of the case that it had been shorn of all its equitable features, (as said in *McNulty's Case, supra*), before the trial. Upon the evidence, the plaintiffs were deemed by the court to have failed in establishing their right to restrain the defendant from continuing the operations as then conducted. I conclude, therefore, upon this point that there was no error committed by the trial court in holding the case for its judgment as to the relief which the plaintiffs should be awarded, whether equitable, or, simply, in a pecuniary compensation.

A further question is presented with respect to the damages. The trial court awarded the sum of $4,500 for the damages sustained from a date six years prior to the commencement of the action down to the date of the trial. When the action was commenced, in 1898, the plaintiffs had submitted to a definite loss, upon the renewal of their lease, in 1895, for a term of five years, amounting to $3,000 a year, or to $15,000 for the whole period. Prior to 1895, they were receiving the rental value of their property under the lease of 1890. It was erroneous, therefore, to award damages for the period antedating the making of the new lease of 1895. Then, only, a loss was first sustained, so far as the record shows, which was recoverable, in the diminished value of the prop-

erty due, according to the evidence, to the effects of the defendant's operation of its power house upon these dwellings and their occupants. The amount allowed by the trial court was less than one-third of the actual depreciation in rental value for the term of five years from 1895 to 1900. The Appellate Division, in affirming the judgment, have said in the opinion, with respect to these damages, that they regarded the case as one where it was possible " to separate the damage allowable from that for which a recovery could not be had," and I think they were right. While the exercise of our jurisdiction to grant to a party such judgment as he may be entitled to, (Code, § 1337), is to be exercised upon the facts found by the court below, I think it is well exercised in this case in the affirmance of the judgment, for the same reason that moved the Appellate Division justices. The findings of fact plainly state that nothing was awarded to the plaintiffs for any damage after the year 1900. They show, equally clearly, that the only damage they had sustained before the commencement of the action was in the re-leasing of their property, in the year 1895, at a depreciation of $15,000 for the whole term of the lease. They, also, show that the moderate award was due to the trial judge's conviction that the depreciation in the rental value, generally, was somewhat influenced by other considerations. Therefore, his finding as to the period wherein damages were recoverable was purely formal and, clearly, inadvertent in its formulation, in view of his previous findings of fact. There should be no difficulty in affirming this judgment, when the recovery was so far within the distinct depreciation of the rental value as shown by the facts found.

For these reasons, I advise the affirmance of the judgment.

O'BRIEN, VANN and WERNER, JJ., concur with CULLEN, Ch. J.; EDWARD T. BARTLETT and HAIGHT, JJ., concur with GRAY, J.

Judgment reversed, etc.