## SHERMAN v. LEVINGSTON.

(Supreme Court, Special Term, Oneida County.   February, 1910.)

1. LANDLORD AND TENANT (§ 142*) — LANDLORD'S REVERSION — INJURIES THERETO.

A lessor is not entitled to an injunction to prevent the establishment of a public automobile garage near the leased premises, where the anticipated injuries will be of a temporary nature from the noise and bad odors, as the damage will be to the lessee's and not to the lessor's estate.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 509–514; Dec. Dig. § 142;* Nuisance, Cent. Dig. § 120.]

2. NUISANCE (§ 11*)—ACQUISITION OF RIGHTS BY PRESCRIPTION.

No user, however long, entitles one to maintain a nuisance.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 42; Dec. Dig. § 11.*]

3. NUISANCE (§ 23*)—INJUNCTION—GROUNDS.

An injunction to restrain the establishment of an automobile garage near plaintiff's property will not be granted, where the injury is only problematical.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 26–34, 55–59; Dec. Dig. § 23.*]

4. NUISANCE (§ 3*)—WHAT CONSTITUTES—AUTOMOBILE GARAGE.

The establishment of an automobile garage in a residential district is not a nuisance per se, and its establishment in a district bordered with nearby shops may not be a nuisance, the business being lawful and necessary, and the greater part of the noise and bad odors may be obviated, and the objectionable features reduced to a minimum.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 4, 5, 9–25; Dec. Dig. § 3.*]

Action for injunction by Richard W. Sherman against Harry M. Levingston.  Decree for defendant.

See, also, 137 App. Div. 929, 125 N. Y. Supp. 1144.

Martin & Jones, for plaintiff.
Miller & Fincke, for defendant.

MERRELL, J.   The plaintiff, Richard W. Sherman, is, and for many years has been, the owner of a certain city lot and premises on the southeast corner of Plant and Hart streets in the city of Utica, N. Y.   On this lot stands a brick slate-roofed dwelling house now and for several years occupied by a tenant; the lease having still several years to run.   About the 1st of October, 1909, defendant acquired title to the northeast corner of Plant and Hart streets, a parcel of land having a frontage of 50 feet on Plant street, and running back on Hart street a distance of 110 feet, and at once commenced the erection of a brick and concrete one-story structure designed to be used as a public garage for automobiles.   This building is directly across Hart street from plaintiff's property and distant from plaintiff's dwelling about 70 feet.   The structure is inclosed, but still unfinished in its interior.

Plaintiff brings this action to obtain a permanent injunction restraining defendant from opening and maintaining a public garage in this building, alleging that such an enterprise is not a reasonable and proper, use by defendant of his premises, and that in view of the locality and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

surroundings the maintenance of a public garage there must inevitably constitute a nuisance, to prevent which plaintiff is entitled to an injunction. It is claimed by plaintiff that the locality where this alleged objectionable business is proposed to be conducted is strictly residential, and that defendant should have sought some point more distant from dwellings at which to erect his garage. The case was tried with the most painstaking care and great ability by counsel for the respective parties. A large volume of evidence was given relative to the locality in question, the character of the occupation of the neighboring property, the conditions existing at public garages generally, as to noise, gases, and other objectionable features, and also as to the operation and testing of automobiles.

After full consideration of the surrounding conditions and upon all the evidence before me, and governed by decisions of the courts which seem to me to be pertinent, I must deny plaintiff the relief which he seeks, upon the following grounds:

First. It must be conceded that the objectionable features, if any develop in connection with the operation of this garage, will be of a temporary nature, and may cease at any moment. I recall no evidence tending to show that the operation of the business in question will work any permanent injury to plaintiff's premises. The objectionable features which plaintiff anticipates are chiefly noise and bad odors. These objectionable things, if they ever come, can only offend the occupant of plaintiff's premises holding under his lease. Plaintiff is but a reversioner and can have no present cause to complain. If a condition shall develop by the operation of this plant whereby the relief of the courts may be properly invoked, so long as the premises are held by the tenant, he and he alone has a cause of action to abate the nuisance that interferes with his enjoyment of the property under his lease. That the owner has no cause of action in cases where the nuisance complained of causes merely temporary annoyance to the occupant, and thereby the premises are not permanently injured, as, for illustration, they would be if the acts complained of cracked the walls of the owner's building or otherwise permanently damaged his property, has been settled by the Court of Appeals in the case of Miller v. Edison Electric Illuminating Co., 184 N. Y. 17, 76 N. E. 734, 3 L. R. A. (N. S.) 1060. Judge Cullen, who delivered the prevailing opinion in that case, quotes the rule of law as follows:

" 'Landlord and tenant have separate assets, and each, if injured therein, may have redress, the one for the injury to the reversion, the other for the injury inflicted in diminishing his enjoyment of the premises.' This statement is doubtless correct; but, under this rule, 'to entitle a reversioner to maintain an action, *the injury must be necessarily* of a permanent character, and that a presumed intention to continue the nuisance is not sufficient, even where there is evidence that the premises would sell for less if the nuisance were continued.' "

Continuing, Judge Cullen says:

"Here the only injury found by the trial court is to the enjoyment and occupation of the premises. That does not affect the reversioner. Had the trial court found that the operation of defendant's light plant cracked the walls or injured the structure, such damage would be of a permanent char-

acter and the reversioner entitled to recover. In the present case, however, not only is there no permanent injury to the plaintiff's buildings, but the defendant's plant did not constitute the nuisance, but its operation, and such operation was not necessarily or inherently injurious because the trial court found that at the time of the trial its operation did not damage the plaintiffs."

It seems to me that Judge Cullen's words are entirely applicable to the case at bar. The plaintiff has leased his premises. He is but a reversioner. No complaint is made to the plant itself, only as to its anticipated operation, and the evidence does not show that any permanent injury to plaintiff's buildings is to be apprehended.

Second. I think plaintiff's action is prematurely brought. He asks an injunction, not against an existing evil, but to restrain something which he fears may come when defendant's garage is once in operation. Plaintiff has seemed to proceed upon the theory that, if defendant were once permitted to establish his garage and open it, he would thereby acquire some rights, and the nuisance would become so entrenched that plaintiff could not successfully combat it. This is, of course, entirely erroneous, as no user of however long standing can bestow any right to conduct a nuisance. The law is too well settled upon this proposition to require the citation of authorities. Defendant can acquire no privilege nor gain any advantage by operating his garage in a manner legally objectionable to the public, and he can be as well restrained after he has once manifested a disregard of the rights of his neighbors as at this time when the conduct of the enterprise is purely problematical. Any nuisance which he creates can better be abated than a merely speculative and apprehended evil restrained. Then, again, until he comes into possession of his premises upon the expiration of his tenant's lease, he has no right of action.

To be entitled to injunctive relief at this stage of the proposed enterprise, plaintiff must establish the fact that a public garage must inevitably prove a nuisance; that it cannot be maintained except it violate the rights of those residing in its vicinity. There can be no speculation or uncertainty about it. It must be shown that the business proposed to be conducted is a nuisance per se. This it seems to me plaintiff has failed to do. Upon all the evidence I am convinced that a public garage may be so conducted that its objectionable features may be eliminated, or at least minimized to an extent that its operation will not unduly annoy or inconvenience those who reside nearby. It appears that defendant has erected a substantial fireproof structure, and that it is proposed to conduct the business for which it is designed in a reasonable manner, so that the rights of neighboring dwellers will not be unduly encroached upon. It is quite likely that many people for sentimental or other reasons might object to the location of a public garage, or indeed any public business near their home; but, so long as the business to be carried on is legitimate, fanciful objection should not be permitted to prevent its operation. Undoubtedly there may be of necessity some noise from the proposed enterprise; but it must be borne in mind that what might be considered out of place and quite unbearable in a rural community or a country hamlet can hardly be so regarded in a busy city.

Assuredly a public garage may be kept clean and free from oil upon its floors. It may be so ventilated that noxious gases and odors may pass off and not be offensive, and proper rules may be promulgated and enforced whereby the noises incident to a garage, the testing of engines, the blowing of horns, and other noises may be reduced to a minimum. Indeed, it appears from the evidence that much of the noise from automobiles can be avoided and is due to a great extent to green and inexperienced drivers and crude machinery of the earlier type of cars. As time passes it is fair to assume that these objectionable features will be greatly reduced.

But, as I have said, the manner of operation of this garage by defendant is entirely a matter of conjecture, and, that being so, the restraining power of a court of equity cannot be invoked. Heaton v. Packer, 131 App. Div. 812, 116 N. Y. Supp. 46; Morgan v. City of Binghamton, 102 N. Y. 500, 7 N. E. 424.

In the case of Heaton v. Packer, supra, the plaintiff sought to enjoin the conducting of a hospital for the insane near his dwelling, and injunction was denied upon the ground that the objectionable features which the plaintiff in that action apprehended were not inevitable, and that the institution might be so constructed and managed that none of the evils anticipated by plaintiff might ever come. In the unanimous opinion in that case the court says:

"The plaintiffs concede that the defendants have a right to erect their buildings on their own land as they may choose, and they do not ask that their erection be restrained. By their allegations, however, they do set forth a large number of things which they apprehend will happen when the asylum shall be established and persons of unsound mind received for treatment. If all should actually happen which the plaintiffs now imagine will happen, possibly they might have a good cause for complaint. The defendant's institution, however, may be so conducted and so managed that none of the evils which plaintiffs apprehend will ever occur. While the establishment of a lunatic asylum in the plaintiffs' neighborhood may not be a desirable thing, still the evils apprehended do not necessarily arise from its maintenance and are not inherent to it like those coming from a slaughterhouse for example.

"The rule sanctioned by the authorities and the text-books with respect to the restraining of an apprehended nuisance by temporary or permanent injunction is that *an injunction will not be granted unless it is apparent or inevitable that the proposed use of the property will actually result in a nuisance.*"

Plaintiff, on submission, cites the case of O'Hara v. Nelson, 71 N. J. Eq. 161, 63 Atl. 836, as in point. That was a garage case, and the owner was enjoined upon the sole ground that upon the premises gasoline was to be stored in quantities, and therefore in a thickly built up locality, with the complaining party's frame building only four or five feet away, there was imminent danger of damage from explosion of the gasoline. The case at bar is clearly distinguishable from the New Jersey case. There the plaintiff's building which he claimed was in jeopardy was but four or five feet distant from the garage, and was a wooden frame structure. In our case plaintiff's building, a brick structure with slate roof, is at least 70 feet distant from defendant's plant. Moreover, it does not appear from the evidence that defendant proposes to store gasoline in quantities.

If defendant so conducts his garage that plaintiff's apprehensions are realized, it will then be time to enjoin its continuance.

Finally, the business of conducting an automobile garage is not a nuisance per se, but is a legitimate and necessary industry. Stein v. Lyon, 91 App. Div. 593, 87 N. Y. Supp. 125.

It is an oft-repeated expression that the automobile has come to stay. They have ceased to be the plaything for the use exclusively of the idle. They have now become an important adjunct to our business and commercial life and are fast rivalling in general use the horse-drawn vehicle. With them long distances may be covered with nearly the speed of the railroad train, and remote localities are reached where the railroad is unknown. Their use is not limited to a steel track nor governed by time schedules. In this era of good roads with the constant improvement of our highways the use of the automobile as a means of transportation is bound to increase accordingly. The mechanism of motor cars is complicated, repairs must be made by skilled machinists, and cars must be housed. Public garages have become a necessity.

The plaintiff insists that the location of this proposed garage is in a strictly residential neighborhood, but the proof does not quite establish this to be the exclusively residential section of the city that plaintiff claims. It appears that this garage will be only about 300 feet from Oneida Square, which forms the junction of several streets, and upon which are located a public garage, a tavern, a large number of shops and other business enterprises, making a considerable business center. On the west a single block distant other shops and business places are located, and still nearer is located a private automobile garage where several machines are kept. A large proportion of the neighboring property is occupied by tenants. The neighborhood where plaintiff once resided appears to have lost its exclusiveness as a residential district. Utica is a prosperous commercial center and is rapidly assuming the characteristics and appearance of a cosmopolitan city. With its growth must be expected some of the noises and bustle which in its earlier existence would have seemed out of place and unbearable. With the growth of business comes the adoption of new methods. The quiet of yesterday must yield to the advancing commercial activity of to-day.

So far as the evidence before me discloses I do not think that the proposed use by defendant of his property is unreasonable, nor that he should be restrained therein, at least until the evils which plaintiff apprehends are shown to exist.

Entertaining these views, I am constrained to deny plaintiff the injunction which he asks.

Formal decision in accordance with the foregoing memorandum may be prepared.