E. O. STOVERN, Appellant, v. TOWN OF CALMAR, Appellee.

**NUISANCE:** Abatement—Avoidance of Peremptory Abatement by City.
1   A sewer system which is being maintained by a municipality for sanitary purposes, *but which is a nuisance,* should not be peremptorily and finally abated, but the court should (while retaining jurisdiction) enter an interlocutory order of abatement and give the municipality a reasonable time in which to effect the abatement.

**NUISANCE:** Damages—Decrease in Rental Value. An owner of land
2   may recover, as one of his elements of damages consequent on the maintenance of a non-permanent nuisance, the difference in the rental value of the premises with and without the nuisance, it appearing that the nuisance was in existence at the time the property was rented.

Headnote 1:    43 C. J. p. 1161; 29 Cyc. p. 1250.    Headnote 2:    29 Cyc. p. 1271.

Headnote 1:   20 R. C. L. 482.   Headnote 2:   52 L. R. A. 49; 20 R. C. L. 470.

*Appeal from Winneshiek District Court.*—W. L. EICHENDORF, Judge.

· NOVEMBER 22, 1927.

Action for injunction of a nuisance, and for damages. The trial court allowed damages, refused injunction, but ordered nuisance abated before January 1, 1927. Both parties appeal.— *Modified, affirmed, and remanded.*

*Goheen & Goheen* and *E. R. Acres,* for appellant.

*C. N. Houck* and *W. M. Allen,* for appellee.

WAGNER, J.—The defendant is an incorporated town, having a population of a little in excess of 1,000 people. About 18 years ago, it installed a sewerage system, consisting of mains

1. NUISANCE: abatement: avoidance of peremptory abatement by city.

and laterals. In connection with this system, a 10-inch tile drain was installed, leading from the town to and upon land owned by one Busch, where it emptied into a cement tank; but there was no septic tank or filter beds installed as a part of said system, the city having employed a man who, twice a year, placed chemicals in the tank, for purposes of purification. At a later date, more than five years prior to the commencement of this action, a tile drain was installed, to carry sewage from the tank across the land of Gehling, where it emptied into a creek about 20 rods above the land of the plaintiff. On plaintiff's farm there are two sets of buildings, about one-half mile from the creek. For the last five years prior to the commencement of this action, the farm was rented, the plaintiff receiving $6.00 per acre cash rent, and milk and potatoes for his own use; and he reserved the use of one of the houses on the farm, in which to live. The creek hereinbefore mentioned, laden with sewage, flows through the edge of plaintiff's farm, a distance of approximately 900 feet, and cuts off about 4¾ acres of said farm. There is running

into this creek on said farm another creek, with running water which is in no way affected by the pollution escaping from the sewerage system. The evidence establishes the fact, which is not seriously disputed by the defendant, that the creek is polluted by the sewage coming to it from the system as aforesaid, so as to constitute a nuisance.

The plaintiff, in his petition, asks an injunction, and also damages. The trial court allowed plaintiff damages in the sum of $259.91, refused an injunction, and ordered the nuisance abated on or before January 1, 1927. Both parties appeal.

The plaintiff complains because of the refusal of the court to grant an injunction, and because, as he claims, the amount allowed is not commensurate with the damages. The defendant contends that the plaintiff is entitled to no amount as damages, and that he was not entitled to an order of abatement. The corrupting or rendering unwholesome or impure the water of any stream constitutes a nuisance. Section 12396, Code of 1924. An action may be brought to enjoin the nuisance and abate the same and to recover damages sustained on account thereof. Section 12395, Code of 1924.

It is shown by the evidence that, at the time of the trial, in October, 1926, the defendant town had entered into a contract for the installation of a sanitary sewerage disposal plant, to take care of the sewage in a sanitary way, which plant was, at that time, about three fourths done, and the engineers in charge gave it as their opinion that the same would be completed by November 20, 1926.

It is further shown that tentative preliminary arrangements for the construction of the sanitary disposal plant were made about the first of March, 1926. As stated, the defendant town complains because of the order of abatement, and the plaintiff complains because the court did not grant an injunction. The defendant relies upon the two cases: *Perry v. Howe Co-op. Cream. Co.*, 125 Iowa 415, and *Bennett v. National Starch Mfg. Co.*, 103 Iowa 207. In the latter case, injunction was refused because the causes of offense for which the defendant was responsible were almost wholly removed before the action was commenced. In the former case, injunction was refused because it was shown, at the time of trial, that the nuisance had been abated. Neither of these conditions prevailed in the instant

case. A nuisance was shown to exist at the time of the commencement of the action, and the same had not been abated at the time of the trial.

In some instances, the interests of the few must temporarily yield to the general welfare of the public. Had the court granted an absolute injunction before the town had time to install its sanitary disposal plant, it probably would have imperiled the health of all the people residing in the defendant town, and been a nuisance of greater significance than the one sought to be enjoined. The court should not have made its decree final, but the same should have been, in its nature, interlocutory, giving the defendant a reasonable time in which to abate the nuisance, but holding jurisdiction for the final determination herein as to the rights of the parties in this respect. The plaintiff should not be required to resort to another action to obtain rights to which it is justly entitled herein. *Bushnell v. Robeson. & Co.*, 62 Iowa 540.

"Where a use of property is found to be a nuisance, it is proper to allow defendant a reasonable time to rearrange or remodel his appliances so that they will not further operate as a nuisance, or to remove his plant, before an injunction against the business or use is allowed to take effect." 29 Cyc. 1250.

The trial court could not know as a certainty that the nuisance would be abated by January 1, 1927. We do not know whether the nuisance has been abated. We therefore remand the case to the district court, for the purpose of taking evidence upon the single proposition as to whether a nuisance still exists, and for the purpose that, upon said hearing, such decree with reference thereto as may be warranted by the evidence may be rendered.

Now to what, if any, amount is the plaintiff entitled by way of damages? He introduced evidence upon the question of the difference in the rental value of his farm of 170 acres during the

2. NUISANCE: damages: decrease in rental value.

5-year period that the creek was polluted as aforesaid, and what would have been the rental value of said farm during said period, if the creek had not been befouled. That the diminution of such rental value is an element of damage in a case of this kind which can properly be shown, see *Vogt v. City of Grinnell*, 123 Iowa 332; *Boyd v. City of Oskaloosa*, 179 Iowa 387; *Shively v. Cedar Rap-*

*ids, I. F. & N. W. R. Co.*, 74 Iowa 169; *McGill v. Pintsch Comp. Co.*, 140 Iowa 429. Therefore, the decrease is one of the elements of damage which can be recovered by someone. It is contended by the defendant that such recovery can be had only by the tenant.

This is an action in tort, and the rule is well recognized that a tort-feasor is liable for all damages accruing to any person which are the proximate result of his tort. What, if any, damage the tenant could recover, is not involved in this action. The question is as to whether or not the plaintiff, being the owner of the real estate, can recover the diminution of the rental value caused by the nuisance, as an element of damages. The nuisance in this case is not permanent, but an abatable one. Although the nuisance existed at the time when the real estate was rented to the tenant, it was subject to be abated at any time during the tenancy. In *Boyd v. City of Oskaloosa*, supra, which was an action brought by the owner in possession, for damages caused by an abatable nuisance, we said:

"The plaintiff occupied his farm of 70 acres as a home for himself and family. It was not for rent, and therefore loss of rental was not experienced, and might not accurately measure the damages he had suffered. But evidence of diminution of rental value is admissible in such cases, as tending to measure in part the injuries suffered."

It appears that it was in the mind of the writer that, if the property had been rented, the owner could recover loss of rental. In *McGill v. Pintsch Comp. Co.*, supra, which was an action brought by the owner of the property, occupied at the time by a tenant, for damages caused by an abatable nuisance, we said:

"The dwelling was occupied by a tenant, and depreciation in the value of the premises because of the injury, as it was not permanent, but subject to abatement, was not the measure of damages. * * * In such a case, in absence of injury to the property itself, the measure of damages is the diminution in the rental value caused by the maintenance of the nuisance. * * * No evidence was adduced tending to show the diminution of the rental value because of the conduct of defendant's business in such a manner that smoke, soot, fumes, and noises emanated from the plant and interfered with the comfortable enjoyment

of plaintiff's premises, and for this reason, no more than nominal damages should have been allowed."

It thus becomes manifest that we held in said case that, the owner of the property in the possession of a tenant was entitled, as damages, to the diminution of the rental value, and the only reason that the plaintiff's damages in said case were nominal was because of lack of proof as to the diminution in the rental value caused by the nuisance. The defendant contends that the damage was not to the freehold or to the reversionary interest held by the plaintiff, but that whatever damage was done, was to the right of occupancy and comfortable enjoyment of the premises, which belonged only to the tenant. In Foster v. Elliott, 33 Iowa 216, cited by the defendant, the plaintiff, being the tenant, sought to recover damages for the throwing down of fences inclosing the leased land, and it was held that he could recover, the court saying:

"Again, it is claimed that the plaintiff, being merely a tenant, cannot recover damages for the removal of the fence. The gist of the action of trespass is an injury to the possession. For a wrongful act which lessens the tenant's enjoyment or impedes him in the legitimate use of the property of which he is in possession, it is clear to us that he may maintain an action of trespass. And that the throwing down of the fences around lands held for agricultural purposes will produce such results, no one will deny."

In Morrison v. Chicago & N. W. R. Co., 117 Iowa 587, also cited by the appellant, the plaintiff, being a tenant, was allowed to recover damages by reason of the death of stock, caused by an obstruction maintained by the defendant, the court saying that such a nuisance is a continuing one; and that the lessee may maintain a suit for injury to the use of the leasehold occasioned by continuance of a previously existing nuisance, appears to be well established. It is manifest that the holding of this court in said two cases is correct, and based upon the principle that a tort-feasor is liable to any person for damage which is the proximate result of his wrongful act. Although the defendant in said two cases was liable to the tenant, the defendant would also be liable to the owner for damage proximately caused by his wrongful act of either commission or omission. The defendant also relies upon the pronouncement of other courts, to wit:

*Kansas City, Ft. S. & M. R. Co. v. King,* 63 Ark. 251 (38 S. W. 13) ; *Bly v. Edison Elec. Illum. Co.,* 172 N. Y. 1 (58 L. R. A. 500) ; *Miller v. Edison Elec. Illum. Co.,* 184 N. Y. 17 (6 Ann. Cas. 146, 3 L. R. A. [N. S.] 1060) ; *Baumann v. City of New York,* 227 N. Y. 25 (8 A. L. R. 595). It also relies upon the authorities cited in the note to the above case found in 8 A. L. R., commencing on page 614: In the *Kansas City, Ft. S. & M. R. Co.* case, a fence was built by the defendant after the tenancy began, and it was not shown that there was any damage to the reversion. Clearly, this case is not authority in the instant case, where the nuisance existed at the time of the commencement of the tenancy. The New York cases cited by the defendant appear to uphold the town's contention. In the *Miller* case, it is held that, where a temporary or abatable nuisance resulting from the operation of a manufacturing plant affects only the comfortable enjoyment of the leased premises during the possession and occupancy of the tenant, the landlord cannot recover for diminution in the rental value of the premises, though the nuisance was in existence at the commencement of the tenancy, and the landlord, in making successive renewals of the lease after the expiration of the original term, has been compelled to reduce the rent. The editor, in the note appended to the report of the *Miller* case, 3 L. R. A. (N. S.) 1063, doubts the soundness of the New York cases, and because his language expresses our view, we quote from it, as follows:

"It would seem, however, that in a true view the measure of damages recoverable by the owner of premises—assuming that he is entitled to recover at all—from a nuisance not of a permanent character, affecting the rental value of the property, would be the same whether he rents the premises after creation of the nuisance or retains possession of them himself. * * *"

Where a nuisance is created after the leasing of the premises, then clearly the owner cannot recover the diminution of the rental value accruing during the tenancy; but if, as in this case, the nuisance is in existence at the time when the real estate is leased by the owner, and said nuisance depreciates the rental value of the real estate, and the owner leases the same for less than would be its rental value without the nuisance, and said nuisance continues during the entire term of the tenancy, the

owner is entitled to recover the amount of his damages up to the amount of said diminution.

Since we hold that the plaintiff is entitled to recover, as an element of damages, the amount of depreciation in the rental value of the farm, is the amount allowed by the court by way of damages commensurate with the injury inflicted? We do not hold that the diminution of the rental value is all that can be recovered, in a proper case. The inconvenience and discomfort from noisome odors and offensive smells occasioned by the maintenance of a nuisance are also elements of recovery, as well as diminution of the rental value. See *Boyd v. City of Oskaloosa,* supra. There is no evidence in the instant case of any special damages, such as sickness in the family or death of stock, etc. The plaintiff occupies a house situated upon his farm, about half a mile from the polluted creek; but it is apparent from the record that the inconvenience and discomfort personally suffered by the plaintiff are inconsequential. While some of the testimony tends to show that the diminution of the rental value is much more than the amount allowed by the trial court, one of the witnesses for plaintiff testified, in substance, that the rental value with or without the nuisance would be the same. The witnesses were asked as to the rental value of the entire farm with and without the nuisance. The plaintiff not only received the amount of cash rent paid by the tenant, but he, himself, has a place of residence upon the farm, and received milk and potatoes for his own use. Therefore, he received much more than the amount paid in cash. Moreover, the trier of the fact is not absolutely bound by the testimony of expert witnesses upon the question of values. In determining said matter, he may use his own knowledge, and take into consideration his own judgment, in connection with the testimony.

We are abidingly satisfied, after a careful perusal of the record, that the amount allowed by the trial court is adequate for all damages suffered by the plaintiff.

The judgment and decree of the lower court is affirmed, except as to modification hereinbefore referred to, and the case is remanded to the lower court for the purpose hereinbefore mentioned. The costs in this court are taxed one half to the plain-

tiff and one half to the defendant.—*Modified, affirmed, and remanded.*

· EVANS, C. J., and STEVENS, FAVILLE, and KINDIG, JJ., concur.