SIMEON ROBINSON AND ANOTHER v. MARGARET WEST-
MAN AND ANOTHER, *d. b. a.* HILLTOP RIDING ACADEMY.[1]

June 6, 1947.

No. 34,346.

[1]Reported in 29 N. W. (2d) 1.

106

*Mark J. Woolley* and *Stanley V. Shanedling,* for appellants.

*Thomas Tallakson, Bessesen & Bessesen,* and *Arthur E. Giddings,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Action to enjoin maintenance and operation by defendants of the stable, corral, clubhouse, and the business known as Hilltop Riding Academy on the premises at 4500 Central avenue northeast, Fridley township, Anoka county, adjoining the city of Columbia Heights.

The trial court found that defendants' business and the manner of its operation constituted a nuisance to plaintiffs and other nearby residents and ordered judgment perpetually enjoining defendants from operating the same.

From the trial court's order denying defendants' motion for amended findings or a new trial, this appeal is taken. On appeal, defendants admit that the evidence sustains the court's findings as to certain abuses in the operation of the academy, and that by reason

thereof the same constituted a nuisance, but contend that since the business is not a nuisance per se the court erred in perpetually abating it rather than abating only *the manner in which it was conducted*.

Defendant Walter H. Westman commenced operation of the riding academy on the described premises under a lease in 1937. In 1942, he purchased the two-acre tract on which the business was conducted, including the stable and corral thereon. The clubhouse, also situated thereon, had been constructed by him during the period in which he operated under lease, under an agreement authorizing him to remove the same upon the termination of his lease. It is used for the convenience and entertainment of patrons of the academy and as the residence of defendants' family.

Personal property consisting of horses, saddles, hayrack, sleigh, and other equipment had been previously acquired by defendants. A small pasture adjoining the property, leased by defendants, is used for pasturing and exercising the horses. The business is located in a neighborhood of small homes wherein reside families of moderate circumstances, many of whom maintain small flower and vegetable gardens adjacent thereto. Most of these families have children. The roads in the district are unpaved, but surfaced with dirt and gravel.

In 1942, defendant Walter H. Westman married defendant Margaret Westman, who subsequently assisted him in the operation of the business and remained in charge thereof while her husband served in the armed forces from 1942 until his return in 1945.

The riding academy has been a source of constant trouble and annoyance to homeowners in the vicinity. Prior to this action, some 79 of them petitioned the town board of Fridley to abate the same on the ground that it was a nuisance. No action was taken thereon, and this action, instituted by plaintiffs on their own behalf and on behalf of other residents of the vicinity similarly affected, followed.

At the trial, the evidence, garnered for the most part from the testimony of some 15 of the neighboring residents, established:

That for many years prior thereto defendants have kept on the described premises at least 20 and as many as 30 riding horses, and a hayrack and sleigh for hire; that patrons using defendants' horses and equipment customarily have followed a route to and from defendants' premises through the nearby streets and roads, past the homes of plaintiffs and other complaining witnesses; that while thus riding over these roads and past such homes these patrons on many occasions have traveled in large groups, often with as many as six riders abreast on the narrow highways, and have raced and galloped their horses thereon and thereby endangered small children and other pedestrians lawfully using the streets; that they have on frequent occasions trespassed upon the yards and gardens of the home-owners, trampled their lawns and gardens, pounded on their doors and windows, shouted loud, profane, and insulting language to the occupants, and reviled them when they made complaint.

That at other times, when hay-ride or sleigh-ride parties have used defendants' horses and equipment, large groups riding on such vehicles have gone through the streets shouting, jumping off and on such vehicles, running up to the houses, ringing doorbells thereof, scattering straw over the lawns and streets, and otherwise generally creating a nuisance.

That in the maintenance of the corral and stable during this period defendants have permitted the accumulation of filth and manure therein, thereby causing foul and obnoxious odors to blow into and near adjacent homes, including plaintiffs', compelling the occupants to close their windows, such odors permeating clothing and laundry hung out to dry, attracting flies, insects, and vermin, and drawing rats thereto.

That flies and mosquitoes have been drawn to defendants' premises by the accumulations of filth and manure or by the horses thereon, and that these insects have disturbed and irritated defendants' horses, causing them to kick and paw and otherwise create loud noises almost constantly throughout the day and night, particularly during the warm weather.

That in the immediate vicinity of the clubhouse on defendants' premises patrons have frequently gathered at nighttime, making loud noises, shouting, and blowing automobile horns, playing music, and dancing within said clubhouse until late in the night.

That all of the foregoing acts have constituted a nuisance to plaintiffs and other residents in this vicinity, endangering their safety and security and that of their children; interfering with their sleep and rest and with the comfort and enjoyment of their property; injuriously affecting their health; and greatly depreciating the value of their homes.

Defendants contend that, notwithstanding the foregoing facts, there is no reason why in the future the evils complained of may not be eliminated, pointing out that the use of DDT will eradicate the flies and insects; that frequent removal of manure will obliterate the foul odors; that the employment of experienced trail riders accompanying defendants' horses and the patrons thereon will terminate abuses on the trail; that a recently enacted village ordinance prohibiting riding on the streets after 11 p. m. will end abuses occurring during the night; and that if the court had abated or enjoined the abuses complained of or established plaintiffs would have no cause for complaint in the future.

■ M. S. A. § 561.01, provides:

"Anything which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance. An action may be brought by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance, and by the judgment the nuisance may be enjoined or abated, as well as damages recovered."

Thereunder, a person injuriously affected by a nuisance may bring action in his own name and in behalf of others similarly affected to abate the same. Even if the nuisance to some extent be regarded as a public nuisance, nevertheless, if private rights are affected thereby, an action to abate the same may be instituted by the persons whose

rights are thus affected. Viebahn v. Board of Co. Commrs. 96 Minn. 276, 104 N. W. 1089, 3 L.R.A.(N.S.) 1126; Matthias v. M. St. P. & S. S. M. Ry. Co. 125 Minn. 224, 146 N. W. 353, 51 L.R.A.(N.S.) 1017.

■ The foregoing rules are equally applicable whether the nuisance be defined as a nuisance per se or as a nuisance in fact. In either case, the procedure for its abatement and the relief available fall within the same principles, the distinction between the two situations relating only to the matter of evidence or proof. As stated in Pennsylvania Co. etc. v. Sun Co. 290 Pa. 404, 410, 138 A. 909, 910, 55 A. L. R. 873:

"* * * The difference between a business, which, no matter how it is conducted, is a nuisance per se as to certain location and surrounding, and a business which is being so conducted as to become a nuisance, lies in the proof, *not in the remedy*. In the former, the right to relief is established by averment and proof of the mere act; in the other, proof of the act and its consequences is necessary." (Italics supplied.)

■ It is true that ordinarily a legitimate business enterprise is not a nuisance per se, but it does not follow therefrom that it may not become a nuisance in fact by reason of the manner of its operation, particularly if located in a residential district. If the evidence establishes that such a business in fact is a nuisance, relief may be granted to those injuriously affected thereby. Lynch v. Shiely, 131 Minn. 346, 155 N. W. 390; Brede v. Minnesota Crushed Stone Co. 143 Minn. 374, 173 N. W. 805, 6 A. L. R. 1092. In such cases, the exercise of due care by the owner of the business in its operation does not constitute a defense where, notwithstanding the same, the business as conducted seriously affects the health or property rights of those in its vicinity. Lynch v. Shiely, *supra;* Bowers v. Mississippi & Rum River Boom Co. 78 Minn. 398, 81 N. W. 208, 79 A. S. R. 395; Batcher v. City of Staples, 120 Minn. 86, 139 N. W. 140; Millett v. Minnesota Crushed Stone Co. 145 Minn. 475, 177 N. W. 641, 179 N. W. 682.

■ It has frequently been held that a legitimate business located in a residential neighborhood and operated so as to pollute or contaminate the air through noxious odors created by it, or which, because of noises emanating from it, disturbs the peace and quiet of the neighborhood, or which in other ways endangers the safety and security of its residents or unreasonably interferes with their property rights, is a nuisance in fact, against which will lie injunctive relief. Matthews v. Stillwater G. & E. L. Co. 63 Minn. 493, 65 N. W. 947; Lead v. Inch, 116 Minn. 467, 134 N. W. 218, 39 L.R.A.(N.S.) 234, Ann. Cas. 1913B, 891; Lynch v. Shiely and Brede v. Minnesota Crushed Stone Co. *supra.* Likewise, if a legitimate business is conducted in such a way as to interfere with the rights of others in the use of the public highway, the same may be regarded as a nuisance subject to abatement. Commonwealth v. Perry, 139 Mass. 198, 29 N. E. 656.

■ The foregoing rules are to some extent summarized in Lynch v. Shiely, *supra,* which, as does the instant case, involved the maintenance of horses and a stable in a residential district. Therein this court stated (131 Minn. 347-348, 155 N. W. 390):

"In Lead v. Inch, 116 Minn. 467, 134 N. W. 218, 39 L.R.A.(N.S.) 234, Ann. Cas. 1913B, 891, the court in commenting upon an action similar to this, though differing in its facts, said:

"'A barn or stable wherein horses or cattle are kept is not a nuisance *per se,* although it may become a nuisance by reason of its location and the manner in which it is managed and conducted. Albany Christian Church v. Wilborn, 112 Ky. 507, 66 S. W. 285; Joyce, Nuisances, § 202. If the manner in which it is conducted results in noxious odors, disagreeable noises, to the discomfort and annoyance of adjoining property owners, it is a nuisance within the meaning of the law, regardless of the question whether defendant exercised due care to so manage the property as to avoid results of that nature. Joyce, Nuisances, § 202; Berger v. Minneapolis Gaslight Co. 60 Minn. 296, 62 N. W. 336. In other words, where the business casts off noxious and unwholesome odors, in fact annoying to and impairing the comfort of adjoining property owners, it is no

defense to say that it was conducted in a reasonable and proper manner, and that the odors emanating therefrom were such as are ordinarily incident to the business when properly conducted.'

\* \* \* \* \*

"\* \* \* We do not care to adopt the doctrine that one conducting a business, not *per se* a nuisance, is liable only upon proof of negligence. The application of such a doctrine would sometimes be disastrous."

■ In nuisance cases, as in other cases involving injunctive relief, the extent of the relief to be granted lies largely within the discretion of the trial court. As usual in such cases, our function is to determine whether such discretion has been abused. In determining the extent of the relief to be granted, certain well-established principles must govern. Generally speaking, a lawful business should not be destroyed or unreasonably hampered except to the extent necessary for the reasonable protection of the personal or property rights of another. Roukovina v. Island Farm Creamery Co. 160 Minn. 335, 200 N. W. 350, 38 A. L. R. 1502. The type of business involved and whether, because of some natural resource such as mineral, stone, or gravel, it must be conducted at a fixed place should be given proper weight in determining this question. Brede v. Minnesota Crushed Stone Co. *supra.*

■ The rights of habitation in residential districts ordinarily are superior to the rights of trade or business therein, particularly where the business may be defined as nonessential and not dependent upon a fixed location. Brede v. Minnesota Crushed Stone Co. 143 Minn. 374, 173 N. W. 805, 6 A. L. R. 1092, and Millett v. Minnesota Crushed Stone Co. 145 Minn. 475, 177 N. W. 641, 179 N. W. 682, *supra.* Where the neighborhood is a residential district, it is immaterial that the complaining party moved into the district subsequent to the establishment of the business complained of and with knowledge of its existence. Romer v. St. Paul City Ry. Co. 75 Minn. 211, 77 N. W. 825, 74 A. S. R. 455; Joyce v. Village of Janesville, 132 Minn. 121, 155 N. W. 1067, L. R. A. 1916D, 426; Brede v. Minnesota Crushed Stone Co. *supra.*

■ Where superior rights of habitation are involved and the only effective remedy against a business operated so as to constitute a nuisance within the statutory definition thereof is in its complete abatement, an order to such effect is within the discretion of the court. Lead v. Inch, 116 Minn. 467, 134 N. W. 218, 39 L.R.A.(N.S.) 234, Ann. Cas. 1913B, 891, *supra;* Meagher v. Kessler, 147 Minn. 182, 179 N. W. 732; 46 C. J., Nuisances, § 416; Baker v. Bohannan, 69 Iowa 60, 28 N. W. 435; Rowland v. New York Stable Manure Co. 88 N. J. Eq. 168, 101 A. 521; Grant v. Rosenburg, 112 Wash. 361, 192 P. 889, 196 P. 626.

In Lead v. Inch, under the foregoing principles this court approved an injunction granted by the trial court (116 Minn. 473, 134 N. W. 220)—

" 'perpetually enjoining the defendant, either by himself, his servants, agents, or any of them, from maintaining or permitting to be maintained on the property of the defendant, * * * the barn and stable for horses in such numbers or in such manner as to produce noise sufficient habitually to disturb the sleep or comfort of the occupants of the plaintiff's house, * * * or from maintaining or permitting to be maintained * * * a stable for horses in such numbers as to habitually produce odors or gases that shall be offensive to the senses of the plaintiff or his family in said house of the plaintiff, or to interfere with the comfortable enjoyment of plaintiff's house by himself and family,' and restraining and enjoining specific acts not necessary here to repeat."

■ On the admitted facts here, we cannot hold that the relief ordered by the trial court constituted an abuse of discretion. Defendants concede that the evidence is ample to sustain the findings. It clearly established that up to the time of trial defendants' business as it was conducted constituted a nuisance seriously interfering with the health, comfort, and security of the residents in this neighborhood and materially depreciating the value of their homes. They have been subjected to many years of annoyance and discomfort. Riders from the academy, in their use of the streets and adjoining

property, have endangered the safety of the children living in this district and restricted their normal activities. The lawns and gardens of residents have been trampled. They have been subjected to noxious odors, insects, flies, and rats originating on defendants' premises. Loud noises, shouts, automobile horns, stamping horses have denied to them their rest at night.

True, defendants contend that many of the abuses may be eliminated in the future, and they argue that therefore the court should have limited the injunction to the removal of such abuses rather than to the abatement of the entire business. We are satisfied from the evidence that defendants' business, by reason of its nature and location and its required use of the streets in this residential neighborhood, will, as long as it remains at its present address, continue to be a source of annoyance and injury to the residents of this district. Our function is to determine whether, from all the evidence, the trial court abused its discretion in granting the relief ordered. We are not at liberty to speculate to any great extent upon what may develop in the future or what the evidence may disclose at some subsequent trial. As indicated, we are of the opinion that the foregoing facts amply justified the trial court's decision. Plaintiffs are entitled to the relief ordered by the court.

The riding academy is not an essential business paramount to the rights of home owners in this residential district. Such a business is not dependent upon a fixed location, and in this instance it may be removed without serious loss to the owners. They fixed its value, including the realty, personal property, and good will, at $12,000. The real estate was purchased for $1,575 in 1942. The frame clubhouse thereon was constructed and owned by defendants prior thereto, with the right of removal thereof. If not removed, it may be easily converted into a residence, which in today's market would yield more than its original cost. The frame stable in the rear may be taken down and removed in sections to a new location or the lumber disposed of by sale. The lots remaining may be subdivided for residential purposes. The horses, harnesses, saddles, hayrack, sleigh, and other equipment are of course readily removable. A

location farther out, affording a greater opportunity for expansion and removed from harassment and complaints of justly protesting neighbors, may result in the development of good will of greater value than at present. All these factors are worthy of consideration on the question of discretion and are material in determining that the trial court was not guilty of an abuse thereof in making the order here under attack.

■ Notwithstanding the foregoing, in view of present building conditions, we feel that defendants should be allowed a reasonable time to acquire a new location and to remove their property and equipment to it. To compel immediate action would require a forced sale of the present property and a forced purchase of any new property to be acquired for their new business. Accordingly, the present order should be modified to the extent of allowing defendants an additional period of eight months from the date hereof to operate their business with a minimum of injury to plaintiffs and others in the neighborhood, during and within which time they shall complete the removal of their property from the premises and bring to a termination their present business thereon as ordered by the trial court. 46 C. J., Nuisances, § 419; Stovern v. Town of Calmar, 204 Iowa 983, 216 N. W. 112; Molden v. Town of Batavia (Iowa) 200 N. W. 183; City of Grand Rapids v. Weiden, 97 Mich. 82, 56 N. W. 233.

Affirmed as modified.