GEORGE W. SWETT and others *vs.* THE CITY OF TROY.

An action will not lie to restrain the erection, for public purposes, by a city
  corporation, of a bridge within the limits of the city, upon one of the streets
  thereof, at the suit of a land owner whose property is not taken or touched.
In such a case, the land owner is not entitled to compensation for the *indirect*
  or *consequential* damages arising or apprehended from the exercise of the
  power of eminent domain.
And an injunction should not be granted until the final hearing, when the
  subject of compensation can be considered; especially where the defendant
  is able to respond, in case the plaintiff shall establish a legal claim to
  damages.

MOTION to dissolve an injunction, obtained by the
plaintiffs to restrain the construction by the defend-
ant of a bridge over the Poestenkill, and within the city
of Troy, in such a manner as to obstruct the flow of the
water from the plaintiffs' foundery, and to prevent the free
passage of ice from their dam.

About twenty years previous to the commencement of
this action, a bridge was erected, at substantially the same
locality, by the Union Railroad Company, under an act
of the legislature, passed June 20, 1851. Such bridge
was constructed with the consent of the city, and was
used by the railroad company for the passage of its cars,
and for other purposes, until it was destroyed by fire.
The city of Troy resolved to construct another bridge, at
the same place, of sufficient capacity to accommodate the
said railroad company, and also to furnish a suitable bridge
for the passage of teams and persons on foot. Such
bridge was being built of stone, with two piers located
within the stream. The plaintiffs were the owners of, and
conducted a foundery and other works, and mainly relied
upon said stream for power to propel their machinery.
Their dam was situated a few rods from where the bridge
was located. No portion of the plaintiff's land was
touched, or taken, by the defendant, in erecting said
bridge. The plaintiffs claimed, however, that the con-

struction of the piers in the stream would inevitably have the effect to prevent the water from flowing freely from their works, and would also obstruct the passage of the ice from their mill pond, thereby occasioning them serious injury and damage. They demanded that such bridge should not be constructed, in the manner proposed, until compensation was awarded to them.

The affidavits read upon the motion were very conflicting upon the question whether or not the plaintiff's property would be injured by such bridge, on account of any serious obstruction in the flow of the water, or passage of the ice. There was also a disagreement in regard to the extent to which the street, with which the said bridge was to be connected, was then, and had been, used as a highway or thoroughfare.

*R. A. Parmenter* and *John P. Albertson*, for the motion.

*Martin I. Townsend* and *Irving Browne*, opposed.

INGALLS, J. The bridge in question is being constructed by the city of Troy, for public purposes, and within the limits of said city, upon one of the streets thereof designated upon the map of said city, and no portion of the plaintiffs' land is touched or taken. I am unable to distinguish this case, in principle, from *Ely* v. *City of Rochester*, (26 *Barb.* 133.) There is a striking similarity between the facts of the two cases; and the reasoning of the court, in that case, applies with force to the case under consideration.

A distinction is sought to be drawn by the counsel for the plaintiffs upon the ground that in the case referred to, the bridge had been used as a public highway or thoroughfare for many years. Whereas, in this case, the bridge had been used, previous to its destruction, for railroad purposes only. If the latter fact should be deemed estab-

lished, although the affidavits upon that question are very conflicting, I do not think the plaintiffs have succeeded in so far distinguishing their case as to avoid the force and effect of the decision in *Ely* v. *City of Rochester*. In the last mentioned case, the bridge was erected in 1824, with two abutments, and two stone piers, located within the channel of the river, and was so used for a period of about thirty years. The new structure was built of stone, with five arches, supported by four stone piers in the channel of the river, with a stone abutment at each end of the bridge. The bridge which was destroyed by fire, and which the city is attempting to replace, was built about twenty years since, pursuant to an act of the legislature, passed June 20, 1851. (*Laws of* 1851, *ch.* 255,) and previous to its destruction had been used for such public purpose. As to the nature and legal effect of such use, see *Bellinger* v. *New York Central R. R. Co.*, (23 N. Y. 42.) The defendant now proposes to construct two piers within said stream. I fail to see why the city of Rochester had acquired any greater right to obstruct the Genesee river by the erection therein of the additional piers, to the prejudice of the mill owners who were dependent upon that stream for propelling their machinery, than the city of Troy possesses to erect, upon substantially the same site, the bridge in question, after the former bridge had been used for so great a length of time, for public purposes, with the consent of said city and for its advantage. And especially so, when the city now proposes to so construct the bridge in question as to accommodate not only the railroad company, but also the public at large, by making it a part of the highway of said city. (*See also Radcliff* v. *Mayor, &c., of Brooklyn*, 4 N. Y. 195; *People* v. *Kerr*, 27 *id.* 188; *Chapman* v. *Albany and Schenectady R. R. Co.*, 10 *Barb.* 360; *Arnold* v. *Hudson River R. R. Co.*, 49 *id.* 108.)

In the last case, GILBERT, J., remarks: "The cases establish the principle that the legislature may rightfully

Swett *v.* City of Troy.

authorize the construction of railroads, or other works of a public nature, *without* requiring compensation to be made to persons whose property has not *actually been taken* or appropriated for the use thereof, but who may nevertheless suffer *indirect* or consequential damages by the construction of such works. The case is clearly within the principle stated. What property of the plaintiffs has been taken or appropriated ? None whatever. They may suffer by having the easement or servitude with which the estate of their grantor, and the roadway of the defendant, are burdened, impaired. But this is an injury which the property of the plaintiffs suffers in consequence of the construction of a public work under legal authority, and not the taking of their property. Such loss has always been regarded as *damnum absque injuria*, except in cases when by the statute compensation is required to/be made."

In *Sedgwick* on *Statute and Constitutional Law*, page 519, under the title Taking Private Property for Public use— when deemed taken, the author remarks : "It seems to be settled, to entitle the owner to protection under this clause, the property must be actually taken in the physical sense of the word, and that the proprietor is not entitled to claim remuneration for *indirect or consequential* damage, no matter how serious, or how clearly and unquestionably resulting, from the exercise of the power of eminent domain. This rule has been expressly declared in many of the States of the Union." The author cites quite a number of decisions in the courts of this State, and elsewhere, in support of his position.

It has been before remarked that no portion of the plaintiffs' land has been taken, or touched, by the defendant. And the injury which the plaintiffs apprehend is indirect and consequential. There is no rule by which it can be ascertained or estimated before the effect of the proposed structure upon the stream is observed, after its

completion. Until then, all conclusions in this respect must, at best, be only conjectural and uncertain.

We have been referred to a series of decisions bearing upon the rights of riparian owners, and defining the nature of such rights. But the rule which obtains in such cases is not necessarily applicable where, as in this case, the apprehended injury must be occasioned by an interference with a stream by the construction of a public work, by public authority, and where the land of the party complaining is not actually taken. I am satisfied that within the principle settled by adjudged cases, the plaintiffs have failed to establish such an interest in real property to be affected in such manner by the structure in question, as to entitle them to demand compensation before the work is completed, or which justifies the continuance of the injunction.

Reference has been made to the case of *George W. Swett* v. *The Mayor of Troy*, in which an injunction was granted, and sustained. But in that case there was a direct physical injury to the plaintiff's land, as the city undertook to fill up the plaintiff's mill pond, and in part upon the land of the plaintiff; which last mentioned fact creates the distinction, in this respect, between that case and this. It does not seem to be contended by the plaitiffs that the bridge is not being constructed with skill, and in a proper manner to answer the purposes intended; and in this respect it is not objectionable.

The affidavits read upon this motion are numerous, and very conflicting, in regard to the probable effect which the structure will have, when completed, upon the flow of water from the plaintiffs' works, and also in regard to the effect of ice, in its passage from the plaintiffs' dam. Each party has advanced a theory in respect to the probable effect of the work in question, and endeavored to support it by facts and scientific investigations and speculations. In order to authorize the continuance of this injunction,

Swett *v.* City of Troy.

the plaintiffs are bound to establish a clear legal right to such injunction, and that they have no other adequate remedy. In the *Sixth Avenue R. R. Co.* v. *Kerr*, (28 *How. Pr.* 383, *affirming S. C.*, 45 *Barb.* 138,) SUTHERLAND, J., remarks: "The threatened injury or grievance must be irreparable, or such as cannot be compensated in damages at law, to authorize a court of equity to interfere." In the same case, another member of the court says: "The injunction should be refused till the final hearing, when the subject of compensation can be considered, and if necessary, the defendants can then be enjoined, unless payment shall then be made." (*Thompson on Provisional Remedies*, 207, 208, *and cases there cited.*)

In this case there is no question as to the responsibility of the defendants to respond, in case the plaintiffs establish a legal claim to damages. Again, if the structure is completed, and it should be adjudged that it materially and permanently affects the plaintiffs' property, to such an extent that it cannot be compensated by an award of damages, and that the plaintiffs are legally entitled to relief, it will be in the power of the court to compel a change or removal of the structure in question.

I conclude that the case does not authorize the continuance of the injunction, and the same must therefore be dissolved, with costs of this motion.

[GREENE SPECIAL TERM, February 12, 1872. *Ingalls*, Justice.]