JULIUS P. MORGAN, Respondent, *v.* THE CITY OF BINGHAMTON, Appellant.

A court of equity will not interfere by injunction with a plan of improve-ment adopted in good faith by municipal authorities, and within the scope of their authority, where injury therefrom is doubtful, eventual or con-tingent.    To justify such an interference it must be shown that injury material and actual is the necessary or probable result.

*Morgan* v. *City of Binghamton* (32 Hun, 602), reversed so far as appealed from.

(Argued April 28, 1886 ; decided June 1, 1886.)

APPEAL from certain portions of a judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made May 31, 1884, which, among other things, affirmed, so far as appealed from by defendant, the city of Binghamton, a judgment entered upon a decision of the court at Special Term.    (Reported below, 32 Hun, 602.)

This action was brought to restrain the construction of the Carroll street sewer, so called, in the city of Binghamton.    By the plan of sewerage adopted by the proper municipal authori-ties, this was to be a main sewer, sewers from other streets emptying therein.    By the judgment the construction of the Carroll street sewer for the use of the residents along that street was permitted, but the use thereof in carrying off the sewage from other streets was restrained and prohibited.

The facts, so far as material, are stated in the opinion.

*A. D. Wales* for appellant.    The right of the plaintiff to his relief should be made so clear as to leave no reasonable doubt, and the relief should not be granted on mere speculation or

proof of a consequential injury not necessarily resulting from the acts complained of. (High on Injunctions, § 488 ; *Phœnix* v. *Commissioners of Emigration*, 12 How. 1 ; *Sweet* v. *City of Troy*, 62 Barb. 631, 632 ; *Radcliff* v. *Mayor, etc.*, 4 N. Y. 245 ; *Williams* v. *N. Y. C. R. R. Co.*, 18 Barb. 222 ; *Wilson* v. *Mayor, etc.*, 1 Denio, 596 ; *Ellis* v. *Duncan*, 11 How. 515 ; *People* v. *Toynbee*, 12 id. 259 ; *Arnold* v. *Hudson R. R. R. Co.*, 49 Barb. 121 ; *Kavanagh* v. *City of Brooklyn*, 38 id. 232 ; *Ely* v. *City of Rochester*, 26 id. 133 ; *Health Dept. of N. Y.* v. *Purdon*, 99 N. Y. 241.) The plaintiff is not entitled to maintain this action for the reason that the nuisance, if any is created, will be a public nuisance. (High on Injunctions, § 522 ; *Lansing* v. *Smith*, 8 Cow. 156 ; *Spader* v. *N. Y. El. R. R. Co.*, 3 Abb. N. C. 475 ; *Fort Plain Bridge Co.* v. *Smith*, 30 N. Y. 62 ; *Groat* v. *Moak*, 26 Hun, 381.) Vague, uncertain and apprehended danger will not justify an injunction. (*City of Rochester* v. *Erickson*, 46 Barb. 92 ; *People* v. *Canal Board*, 55 N. Y. 397 ; *Williams* v. *N. Y. C. R. R. Co.*, 18 Barb. 222 ; *Swett* v. *City of Troy*, 12 Abb. [N. S.] 100 ; *Bouton* v. *City of Brooklyn*, 15 Barb. 375 ; *Phœnix* v. *Commissioners of Emigration*, 12 How. 1 ; *Fisk* v. *Wilbur*, 7 Barb. 395 ; *Harrison* v. *Newton*, 9 N. Y. Leg. Obs. 311 ; High on Injunctions, § 786.)

*G. L. Sessions* for respondent. A municipal corporation is not only responsible for the result of the nuisance created by it to individuals sustaining special damages, but an action will lie against it to restrain such damages by injunction. (1 High on Injunctions, §§ 810, 825 ; *Brower* v. *Mayor, etc.*, 3 Barb. 254 ; *Davis* v. *Mayor, etc.*, 14 N. Y. 526 ; *Negus* v. *City of Brooklyn*, 90 id. 403 ; *S. C.*, 10 Abb. N. C. 182 ; *Beach* v. *City of Elmira*, 22 Hun, 162 ; *Myers* v. *Phelps*, 97 N. Y. 491 ; *Bradt* v. *City of Albany*, 5 Hun, 593 ; *Davis* v. *Mayor, etc.*, 1 Duer, 501–506.) The fact having been established and found that the sewer used for the purpose intended, and as it was about to be used, would necessarily create a nuisance that would poison the atmosphere and depreciate respondent's property, it was just as much an invasion of plaintiff's rights as though there was a tan-

gible interference with his property. (*Manhattan Gas-light Co. v. Barker*, 36 How. 238 ; *Campbell* v. *Seaman*, 63 N. Y. 568; *Noonan* v. *City of Albany*, 79 id. 476.) The nature of plaintiff's damages were such as to enable him to maintain the action. (*Davis* v. *Mayor, etc.*, 14 N. Y. 526 ; *Milhau* v. *Sharp*, 28 Barb. 228; *Manhattan Gas-light Co.* v. *Barker*, 36 How. 238; *First Baptist Church* v. *Troy R. R. Co.*, 5 Barb. 79.) The injury from the sewer was not a speculative one, nor a remote one, nor a contingent one. (*McKeon* v. *See*, 51 N. Y. 307 ; *Davis* v. *Mayor, etc.*, 14 id. 526 ; *Milhau* v. *Sharp*, 28 Barb. 228 ; *People* v. *Canal Board*, 55 N. Y. 390, 397; *City of Rochester* v. *Erickson*, 46 Barb. 92.)

FINCH, J. The findings of fact of the trial judge are conclusive for all the purposes of this appeal. If the evidence leaves any of them doubtful the deficient proof may have been supplied by his personal examination, since he went over the route of the sewer and took careful observation of the locality, with the consent of both parties and doubtless aided by their suggestions. The sole question before us, therefore, is whether upon those findings the plaintiff was entitled to so far defeat the plan of sewerage adopted by the common council as to prevent and restrain the connection of other sewers with that running through Carroll street.

It is not contended that any of the sewers as planned will discharge their contents upon plaintiff's land or in any manner touch or interfere with his premises ; and all the cases in which equity has interfered to prevent the discharge of sewage upon private property have no application. The prevailing opinion at General Term indulges in that misapprehension and has been criticised upon the argument in that respect. The injury apprehended is not that, but something very different. Instead of a direct trespass it is a consequential damage which is threatened. The theory of the findings is that in one or two, or very surely in three years after the branch sewers are emptied into the Carroll street sewer, and have become largely connected with premises along their lines, the discharge at the

mouth of the Carroll street sewer into the river will be strewn along its banks and stranded upon low lands, and tend to produce offensive and unhealthy odors, tainting the air and planting the seeds of disease, and that the premises of the plaintiff are so situated as to be peculiarly exposed to these dangers by reason of proximity.   The evil will reach the plaintiff, if at all, through the poisoning and infection of the air, and not from any discharge of sewage upon his lands, or any deposit of it there by the river currents.

The findings plainly disclose two characteristics of this apprehended danger.   It is not imminent, and it is wholly contingent and not inevitable.   No immediate danger exists.   It is found to be possible within one or two years, but not certain to occur sooner than in three years.   Every finding which prognosticates threatened evil is qualified by the phrase "in time," which limits it to some indefinite future period; and when the findings seek to fix that, they postpone it as a certain danger for three years.   But they leave it then merely a contingency depending, as the findings express it, upon the condition that the branch sewers "should be mainly used by the inhabitants" of the adjoining streets.   Nobody knows when they will be so "mainly used."   Houses which have their own cess-pools and privy vaults may not for many years be fitted with modern closets and sewer connections.   Such improvements are beginning to be questioned for their own evils and dangers, and may come slowly, and no evidence or finding indicates the probable period. The contingency as to time is further made to "depend very much upon the quantity of water used in the sewer."   The twenty-sixth finding of the trial judge explicitly declares that "the pernicious effects of the depositing of sewer matter at this point and the time when such will be felt are dependent upon various uncertain future events;" and this shows that the evil itself as well as the date of its appearance are alike contingent and not inevitable.   The danger, therefore, which can alone support this injunction is in the air of an uncertain and indefinite future.   Its possible coming rests upon opinion and speculation.   It is both doubtful and remote.   Experience

only can test the question satisfactorily, and meantime a carefully planned system of sewerage made to secure health and cleanliness to a growing city is maimed and disjointed.

Such a result, it seems to us, ought not to be sustained. The restraining force of a court of equity should very rarely, in the absence of fraud or bad faith, set itself above the discretion and judgment of administrative officers to whom the law commits a decision. (High on Injunctions, § 1270.) And this for the evident reason that a reversal of their judgment is but saying that the court judges differently upon what has been intrusted to another discretion and simply confronts that opinion with its own. And where the evidence is conflicting and the injury doubtful, eventual or contingent, the tribunal intrusted by the law with the plan and execution ought not to be overruled. (Hilliard on Injunctions, 305; *Swett* v. *City of Troy*, 62 Barb. 630.) "Injury material and actual, not fanciful or theoretical, or merely possible, must be shown as the necessary or probable results of the action sought to be restrained." (*People* v. *Canal Board*, 55 N. Y. 397.) The injury described in the findings before us is problematic, distant, merely possible. Consistently with all their averments it may never occur, and is only prophesied upon the basis of the happening of certain contingencies which may or may not arise. Meantime a plan of improvement looking to the health and comfort of the city and its inhabitants, adopted in good faith by the municipal authorities, with the aid of an engineer not claimed to be incompetent or unskillful, is stopped and dismembered and the branch sewers left useless, to the inconvenience of all desiring their benefit. For three years at least, and very probably for a longer period, the findings leave it certain that no evil will result; and if upon actual experiment it is found that sources of danger exist, it must be presumed that the constituted authorities will do their duty and adopt some plan to remove it. Such a plan the court below suggests, involving a very serious increased expense. That ought not to be forced upon the city until some present necessity shall compel. To sustain this judgment would push our authority beyond its limits and

hamper official bodies, making public improvements beyond reason.

So much of the judgment of the General Term as is appealed from should be reversed, the injunction dissolved and a new trial granted, costs to abide event.

All concur.

Ordered accordingly.