(10 Misc. Rep. 205.)

### ROBINSON v. GILROY et al., Commissioners.

(Common Pleas of New York City and County, Special Term. July, 1894.)

INJUNCTION—RESTRAINING OFFICIAL ACTION—ADMINISTRATIVE DISCRETION.

　　A sale of a New York ferry franchise will not, in the absence of bad faith, be enjoined, at the suit of a taxpayer, for failure of the commissioner making the sale to fix a minimum rate of ferriage, on the ground that, if a railroad company having its terminus at such ferry should acquire the franchise, it could, by prorating the ferriage charges with its railroad fares, so reduce the amount of ferry receipts that the city would receive less than it otherwise might, as the fixing of the rates is a matter of administrative discretion, with which the courts will not interfere.

Action by George H. Robinson, as a taxpayer, against Thomas F. Gilroy and others, pursuant to Laws 1892, c. 301, § 1, to restrain defendants from committing an alleged illegal official act, and to prevent threatened waste or injury to the property, funds, or estate of the municipality of the city of New York, in selling the Staten Island and Bay Ridge ferry franchises. Plaintiff moves to continue an injunction pendente lite. Denied.

Geo. M. Pinney, for plaintiff.

William H. Clark, Corp. Counsel (Chas. Blandy and E. J. Freedman, of counsel), for defendants.

BISCHOFF, J. The defendants, as commissioners of the sinking fund of the city of New York, have offered for sale to the highest

[1] No opinion.

bidder above the minimum or upset price of 5 per centum of the gross receipts to accrue to the lessees, but in no event at less than the annual rental in the sum specified in each instance, two certain franchises for the operation of ferries from the foot of Whitehall street, in the city of New York,—one to Staten Island, the other to Bay Ridge,—upon leases which in terms fix a maximum rate of ferriage for each passenger, to be charged by the lessees, but which omit to mention a minimum rate. This sale of the franchises the plaintiff seeks to enjoin on the ground that, if permitted, it involves the commission of an illegal official act, and will result in a waste of or injury to the property of the municipality. The specific objection which the plaintiff makes to the proposed sale is founded upon his apprehension that, unless the terms of sale and proposed leases also impose a minimum rate of ferriage for each passenger, certain railway corporations—the Staten Island Rapid Transit Company, the terminus of whose railway is contiguous to the landing of the Staten Island ferry at St. George, and the Sea Beach Railway and the New York, Brooklyn & Manhattan Beach Railway, whose termini are contiguous to the Bay Ridge ferry landing at Bay Ridge—may, if they should acquire the use of the ferry franchises, operate them as adjuncts to their respective railways, and then, by prorating a joint charge for ferriage and railway fare to and from any particular point, so depress the ferriage receipts that, notwithstanding the railway companies' covenants to pay a greater percentage of the gross receipts for the use of the ferry franchises than is bid at the sale thereof by every other competitor, they may never become obligated to pay more than the fixed minimum annual rental. That they are enabled to so prorate the fares, the plaintiff argues, gives the railway companies such an advantage over others who, under different conditions, are likely to compete for the franchises at the sale thereof, that the latter are deterred, and hence that the municipality will not, if the sale upon the terms as proposed is permitted, realize as much as it would if a minimum rate of ferriage were prescribed. A minimum rate of ferriage, if required, will, as the plaintiff contends, create equality among all who desire to compete, and so necessarily redound to the advantage of the municipality. For the defendants, it is not disputed that the railway companies named would, as lessees under the proposed leases, be enabled to prorate a joint ferry and railway fare, with the result apprehended by the plaintiff; but it sufficiently appears that, after thoughtful consideration, the defendants have deemed it unwise to prescribe a minimum rate of ferriage, in that respect following the precedent made by their predecessors in office; thus leaving it to the discretion of the lessees of the franchises to reduce the ferriage for the public benefit, and whenever the lessees find it compatible with their interests so to do. To guard against any loss to the municipality from any system of prorating the fares, should the ferries be operated by the lessees of the franchises in connection with other enterprises or means of transit, the defendants have fixed the minimum annual rental at an amount which is in excess

of the percentage upon the estimated gross receipts for ferriage which have accrued to the railway companies, respectively, from the operation of the ferries during any one year in the past. This, the defendants contend, is all that was deemed feasible by them, in the exercise of a sound administrative discretion.

Upon the facts presented, I am unable, upon due reflection, to arrive at the conclusion that the proposed sale is illegal. It is conceded that the defendants have lawful authority to sell the franchises; but the plaintiff contends they are required to sell to the highest bidder, at the highest market price, and that the proposed sale is illegal because, unless the railway companies named are deprived of their alleged advantage over other possible competitors, the highest market price is impossible of attainment. Any advantage, however, which the railway companies have, arises from the fact that they have control of railways whose termini are contiguous to the ferries, and is therefore wholly adventitious,—as much so as if among the possible competitors there are some who, because of their control of cheaper motors or means of propulsion, are enabled to operate the ferries at less cost to themselves than others can operate them. Over such extrinsic advantages it seems impracticable for the defendants to exercise control without unjust discrimination against the possessors of them, and without want of proper consideration in other respects. The terms of the proposed sale and leases apply to all persons alike, and the defendants cannot reasonably be expected to anticipate every extrinsic advantage of some possible competitors over others, and to discriminate against the former. If, because of the contiguity of the termini of the railways to the ferries, the railway companies are enabled to operate the ferries as adjuncts to their means of further transit, so there may be among the possible competitors for the ferry franchises some who desire to operate the ferries in connection with other enterprises or means of transit. Hence, the apprehension of a possible loss to the municipality from a prorating of the fares, and the advantage of such a procedure to the ferry operators, is not to be confined to the railway companies named, as lessees of the franchises. Whether or not the possibility of loss to the municipality can be avoided by the adoption of a minimum rate of ferriage, as suggested by the plaintiff, seems to be a question solvable only by experience, and to be better addressed to the particular man of affairs than to the lawyer or judge, as such, respectively. On this motion we are concerned only with the good faith of the defendants. To charge the defendants, successfully, with attempted waste of or injury to the property of the municipality, it is not enough that there is an honest difference of opinion respecting the manner in which the interests of the municipality may be best subserved. The bad faith of the defendants must appear. In the absence of bad faith, their acts, if within their lawful authority, must be deemed to be within the exercise of the discretion given them as administrative officers. The defendants, lawfully designated as sinking fund commissioners, are to administer

the affairs committed to them, and it devolves upon them to exercise a discretion in the management of those affairs. Such discretion is not to be interfered with by the courts unless it is in excess of authority, or its exercise is for ulterior purposes. Any other course would require the courts to usurp the powers of municipal government. Others may differ from the defendants respecting the practical execution of their trust, but, because they do so, it does not necessarily follow that the defendants have acted, or are acting, in bad faith.

That the defendants, in fixing the terms of the proposed sale and leases of the ferry franchises, have acted in bad faith, is an unwarranted inference from the facts which appear on this motion. If the railway companies named have an advantage over other possible competitors, it seems wholly accidental. It is conjectural only, therefore, to urge that the defendants have manifested favoritism for the railway companies, and thus been derelict in the proper performance of their duties. It is, of course, neither impossible nor improbable that the defendants have erred respecting the best interests of the municipality, in fixing the terms of the proposed sale; but, if so, the error appears to be one committed in the proper exercise of their administrative discretion, and is characterized by their utmost good faith. The maintenance of the ferry franchises as valuable ones is a proper factor for consideration in disposing of them. It is not improbable that this may only be accomplished if the ferries are successfully operated, and it is fitting, therefore, that some discretion should be left to those who undertake to operate them; particularly so, if the public are to be attracted to the use of the ferries, with regard to the ferriage to be exacted. A fixed rate of ferriage may prove disastrous to success, though success could be insured by a lesser rate, and the operators may find it compatible with their interests to extend it. Besides, is it not plausible to apprehend that a fixed rate of ferriage would be more advantageous to the railway companies named than to others who may desire to acquire the use of the ferry franchises, because the former could, by means of their railways, offer greater inducements to the public? Next, the exaction of excessive or rigid terms may operate prohibitively upon the railway companies, the termini of whose railways are contiguous to the ferries; and it is as much for the interests of the municipality that they should compete for the franchises as it is that others do so. Is it to be questioned that the ferries have, in connection with the railways, enhanced in value, and now yield to the municipality a much larger return than they otherwise would, because by means of the railways the ferry passengers are afforded the facilities of access to the remoter parts of Staten Island and Long Island? It is as reasonable, therefore, to apprehend a loss to the municipality from the railway companies' refusal to operate the ferries as from any system of prorating the fares which they may adopt in connection with the railways. Lastly, even the means which the plaintiff suggests as a cure for the apprehended evil can only be effective to a degree, for, if a minimum

rate of ferriage is prescribed, cannot the gross receipts of the ferries, if the latter are operated as adjuncts to means of further transit, be so depressed, by the same system of prorating joint fares, that the municipality is not likely to receive for the use of its franchises a percentage above the fixed minimum annual rental, upon anything but the gross receipts for ferriage apportioned at the minimum rates? The presumption is, as in other actions against public officers, that the defendants have acted, and are acting, in good faith, and this is not overcome by the evidence. With the exercise of the defendants' administrative discretion, in the absence of bad faith, the courts cannot interfere. Morgan v. City of Binghamton, 102 N. Y. 500, 7 N. E. 424; Talcott v. City of Buffalo, 125 N. Y. 280, 26 N. E. 263; Zeigler v. Chapin, 126 N. Y. 342, 27 N. E. 473. Motion to continue injunction denied, and preliminary injunction dissolved, with $10 costs.