Scoville v. Soler.

# SCOVILLE.
## *v.*
# SOLER.

San Juan, Equity, No. 1004.

ON APPLICATION FOR A PRELIMINARY INJUNCTION.

**People of Porto Rico—Commissioner of Health.**

1. In selecting a site for a hospital, the Commissioner of Health acting under special law may be sued.

**Same—Civil Code, § 1804.**

2. Under the civil law a state is liable for the acts of a special agent who may be employed or discharged at will, but not for the acts of a regular official.

**Sovereign—Tortious Agent.**

3. If an agent of a sovereign commits a tort he is liable personally, and it is not to be regarded as a suit against the sovereign.

**Law Limiting Suit to Local Court—Unconstitutional.**

4. The territory of Porto Rico cannot limit its suability to its own courts. The provision will be widened to include the Federal courts.

**People of Porto Rico—Health Questions.**

5. Quære, whether the people of Porto Rico should be called in to a suit affecting the location of a health hospital.

**Tuberculosis—Location of Hospital.**

6. A tuberculosis hospital has to be established somewhere, and is not a nuisance per se, but it may be such if established in a residence neighborhood; and on a preliminary hearing the balance of convenience is an important consideration.

**Hospital—Local Discretion.**

7. A court cannot interfere with the discretion of the administrative officials, but this does not apply to the erection of a hospital on an improper site; but the court will not go into the question of what other eligible sites there may be.

NOTE.—Authorities passing on the question as to whether location of hospital in residential section is a nuisance are collated in notes in 29 L.R.A.(N.S.) 49, and 52 L.R.A.(N.S.) 1032.

Scoville v. Soler.

Sale of Property—Individual Right.

       8. Under the civil law, where both vendor and vendee execute a conveyance before a notary, if the vendee cannot properly purchase, it is not error to forbid the whole transaction.

Chancery—Nuisance at Law.

       9. If it is apparent that there is a nuisance, it is not necessary for a court of chancery to await the reference to a court of law. Precedents in northern climates are not satisfactory guides for conditions in tropical places. Each case must be judged by itself.

Opinion filed March 9, 1918.

----

Messrs. *Chas. Hartzell* and *D. F. Kelley* for complainants.

Mr. *Tannenbaum* for the defendant Ruiz Soler.

Mr. *H. G. Molina* for the defendants Hubbard.

HAMILTON, Judge, delivered the following opinion:

    This bill was filed February 19th, and there was a temporary restraining order granted on the same day. There were subsequently filed several pleadings, one, a motion by defendant Ruiz Soler in the nature of a plea to the jurisdiction, stating that he was in effect the people of Porto Rico for the purposes of this case, and that the people of Porto Rico had not consented to be sued. Then there was another motion as to jurisdiction on account of the plaintiffs not being qualified to sue, but that had to go over on account of lack of evidence at the time. This was agreed to, and no evidence was submitted. Then, there was also a motion to dismiss for want of equity,

Scoville v. Soler.

and of course there was the matter of an injunction pendente lite.

Those three or four things were submitted, and I have given them careful consideration, and have come to the conclusion which I will announce. Whatever is said is entirely subject to reconsideration, because the matter comes up now, not upon the merits, but upon an application for a preliminary injunction, and not otherwise. The court cannot decide the case without having all the facts, and now the matter relates simply to the preliminary injunction. On account of being continuously in court I have not been able to write out my views, but they will be taken down now.

1. Taking up first the matter of the special plea of defendant Ruiz Soler, his contention is that for health purposes the people of Porto Rico act through him, and they have not consented to be sued, and therefore he moves that the case be dismissed as to him. Of course if dismissed as to him, it would be dismissed altogether, because there would be nothing left to go on. That contention, under proper circumstances, has merit. A corporation or sovereign, if that is the proper word, like the people of Porto Rico, can only act through agents. It has no method of acting in any other way, but that in itself is not conclusive. I think there is no question that an agent of the United States or any other sovereign, to use the strongest example, if he acts under an unconstitutional act of Congress, can be enjoined or proceeded against in any proper way. An unconstitutional law being no law, the man would be acting not officially, but individually. It would not be the state in any proper sense of the word. There is no question, however, in this case, I take it, as to any sovereignty. The Jones

Scoville v. Soler.

Act provides, in § 19, that "the commissioner of health shall have general charge of all matters relating to public health, sanitation, and charities." Section 37 of the Jones Act provides "that the legislative authority herein provided shall extend to all matters of a legislative character not locally inapplicable." The point in my mind is this. He would have general control over health and sanitation. There is no question about that. But what he is proceeding under is not any general control of health and sanitation; he is proceeding under two special acts of the local legislature of last year, as follows: "Care of tuberculosis patients, including purchase and repair of equipment, construction, and repair of buildings, and insurance on equipment and on buildings owned by the people of Porto Rico and used as a sanatorium, including also the purchase of the necessary land, payment of salaries of personnel, and expenses of transportation of patients and other expenses, for six months, $20,000." Act No. 71, approved December 6, 1917 (Porto Rico Laws 1917, vol. 2, pp. 546, 554).

And also act No. 89, approved December 7, 1917 (Porto Rico Laws 1917, vol. 2, pp. 582, 639), where the same provision is repeated, and an appropriation of $40,000 is made.

I am inclined to think that, in proceeding under those acts, he is not exercising his general control of health and sanitation. The people of Porto Rico could have selected anybody else to go and buy a site for a hospital. That is not technically a health matter. Of course there are health conditions to be considered; but frequently there are special commissions to buy a site to erect a building, for instance, a Capitol or other public building, while the operation of it afterwards is an en-

Scoville v. Soler.

tirely different matter. Here the operation would be a part of his general duties as to health and sanitation. I am inclined to think that as to the purchase of land he is rather a special agent, and that he will come under § 1804 of the Civil Code. Now § 1804 does not say that such an agent is liable to be sued, but it does say that the state is liable for the acts of such agent, for the torts of such agent, which of course would imply that the agent himself must be liable to suit for the tort, or there could be no responsibility over section 1804, or that aspect of it, I think, has never come up before and never been discussed. The question is res nova. The rule at common law is that the sovereign cannot be sued in any sense, and the decisions in the states follow the common law; but there have been a great many attempts to get away from the principle, so that people will not be subject to the caprices perhaps of a government which they themselves have established. Now the rule here is the Spanish rule. Section 1804 comes from the Spanish Code, and I take it that the word "state" should be applied to Porto Rico in interpreting this statute. Not that Porto Rico is a state; far from it. It is not even, apparently, a territory incorporated into the Union; but it is a government; and unless the word "state" is to be interpreted as applicable to Porto Rico, that part of the section has no meaning at all. I take it that for the purpose of this case that provision is to be held applicable, and Porto Rico is included or meant.

Such responsibility may raise nice questions, and according to another sentencia of February 27, 1907, it has been held that an architect of a municipality is not liable for the negligent way in which a building is demolished where he has merely given general directions. Manresa, 12 Comentarios, 622.

Scoville v. Soler.

The view I take of it is that this is not a suit against the People of Porto Rico, but is a suit against a person who is acting as special agent pro hac vice for the People of Porto Rico, and the laws of Porto Rico authorize him to be sued in any proper forum.

2. But the liability of the state does not exhaust the scope of § 1804. The provision in question reads as follows: "The state is liable in this sense when it acts through a special agent, but not when the damage should have been caused by the official to whom properly it pertained to do the act performed, in which case the provisions of the preceding section shall be applicable." [Compilation 1911, § 4910.]

This is a literal translation of the provision of the Spanish Code, article 1903, which is as follows: "El estado es responsable en este concepto cuando obra por mediación de un agente especial, pero no cuando el daño hubiere sido causado por el funcionario a quien propiamente corresponda la gestión practicada, en cuyo caso será aplicable lo dispuesto en el artículo anterior."

The distinction drawn is that there is a liability on the part of the state for the acts of a special agent, for he can be employed or discharged at will, but that there is none for the acts of a regular official. Nevertheless the official himself is liable personally by the express words of the section where his fault or negligence damages another. This provision is original with the Spanish Code, for it does not occur in the Code Napoleon, § 1384; but it may be regarded as analogous to the Anglo-American doctrine on the subject. The Supreme Court of Spain, in considering the question in its sentencia of May 18, 1904, 98 Jur. Civ. 389, defines a special agent as one who

exercises a definite commission foreign to the duties of his office, and, on the other hand, an official is an executive agent under the employ of the government who performs the normal duties of his position according to law under his own responsibility. If such an official goes beyond his duties he becomes liable personally. Ultra vires he is acting personally. That was a case where a tax collector by his fault or negligence in collecting assessments injured a citizen. It was held that under such circumstances the public treasury was not liable, but only the official himself.

It will be well, however, to discuss the question from all points of view, and we will therefore examine the American authorities on the subject.

3. The people of Porto Rico cannot be sued without its consent. Porto Rico v. Rosaly y Castillo, 227 U. S. 270, 57 L. ed. 507, 33 Sup. Ct. Rep. 352; New York ex rel. Kopel v. Bingham, 211 U. S. 468, 53 L. ed. 286, 29 Sup. Ct. Rep. 190; Gromer v. Standard Dredging Co. 224 U. S. 362, 56 L. ed. 801, 32 Sup. Ct. Rep. 499. And it is also true that a suit against an official in the discharge of his public duties would be a suit against the public authority, and cannot be maintained. There are many decisions along this line, but they will be found on examination to be cases of enforcing a public contract, or to be attempts to direct the discharge of public administrative duties, which is not the function of the judicial department. The leading case of United States v. Lee, 106 U. S. 196, 27 L. ed. 171, 1 Sup. Ct. Rep. 240, long since settled that as to property improperly withheld even an official of the United States can be sued. The sovereign will not be presumed to want what does not belong to it, or to profit by

Scoville v. Soler.

the tort of its agents. No official is above the law. Insular Dock Co. v. P. J. Carlin Constr. Co. 8 Porto Rico Fed. Rep. 25, 42. It is clear an official cannot act under an unconstitutional statute, because in effect there is no statute. Smyth v. Ames, 169 U. S. 466, 42 L. ed. 819, 18 Sup. Ct. Rep. 418; Re Ayers, 123 U. S. 443, 31 L. ed. 216, 8 Sup. Ct. Rep. 164; Osborn v. Bank of United States, 9 Wheat. 738, 6 L. ed. 204. Can he do an act which is not authorized by a constitutional statute?

There is a clear distinction between actions to compel officers of a state in affirmative official action to perform an obligation of the state, and actions against defendants who, while claiming to act as officers of the state, violate and invade the property rights of individuals under color of authority which is unconstitutional. Hagood v. Southern, 117 U. S. 52, 29 L. ed. 805, 6 Sup. Ct. Rep. 608. The inhibition of suits against a state arises under the 11th Amendment of the Constitution. Title and office do not control; an injunction may be granted to restrain the governor and commissioner of the general land office of a state from disposing of public lands which had been granted to complainant. Davis v. Gray, 16 Wall. 203, 21 L. ed. 447. A tax collector may be sued to compel him to receive coupons in payment of taxes. Antoni v. Greenhow, 107 U. S. 769, 27 L. ed. 468, 2 Sup. Ct. Rep. 91; Poindexter v. Greenhow, 114 U. S. 270, 29 L. ed. 185, 5 Sup. Ct. Rep. 903, 962. On the other hand, if the defendants are the only ones through whom a state can act, they cannot be sued for breach of the state's contract, for the suit would be in substance, though not in form, one against the state. Re Ayers, 123 U. S. 443, 31 L. ed. 216, 8 Sup. Ct. Rep. 164. There are

many cases of suits to restain the enforcement by state officials of unjust railroad rates declared under state authority; for in such instances the state is interested merely in a governmental, and not in a pecuniary, sense. Reagan v. Farmers' Loan & T. Co. 154 U. S. 362, 38 L. ed. 1014, 4 Inters. Com. Rep. 560, 14 Sup. Ct. Rep. 1047; Mississippi R. Commission v. Illinois C. R. Co. 203 U. S. 335, 51 L. ed. 209, 27 Sup. Ct. Rep. 90; Stone v. Farmers' Loan & T. Co. 116 U. S. 307, 29 L. ed. 636, 6 Sup. Ct. Rep. 334, 388, 1191. Where money is actually in the state treasury it cannot be reached by any judicial process, because this would be a suit against the state. Sundry African Slaves v. Madrazo, 1 Pet. 110, 7 L. ed. 73; Smith v. Reeves, 178 U. S. 436, 44 L. ed. 1140, 20 Sup. Ct. Rep. 919; Louisiana v. Jumel, 107 U. S. 711, 27 L. ed. 448, 2 Sup. Ct. Rep. 128. A state cannot be sued as such even though it be acting under an unconstitutional law. Louisiana ex rel. New York Guaranty & I. Co. v. Steele, 134 U. S. 230, 33 L. ed. 891, 10 Sup. Ct. Rep. 511. On the other hand, the Federal courts may enjoin a state officer from executing a state law taxing a corporation in violation of a contract contained in its charter. Dodge v. Woolsey, 18 How. 331, 15 L. ed. 401.

An official is the agent of the state, and can act validly only so far as he properly represents his principal. He does not represent it when he acts ultra vires. Suppose defendant Ruiz Soler goes to a spot he selects for a hospital, and shoots the owner in order to get possession; could he claim protection under the ægis of the government? No; a crime is not within the scope or even color of his authority. Has he any greater right to commit a civil wrong, such as a nuisance? There would seem to be no difference in principle. So that the ques-

Scoville v. Soler.

tion is after all upon the facts. If the act complained of is a tort, the defendant would be liable for damages, and if those damages, whether to health or property, are irreparable, he can be enjoined from committing the tort. The jurisdiction, therefore, depends on the nature of the act, rather than on the title of the defendant.

4. It is true that local legislation provides as follows:

"There shall be no remedy in any case for the collection of claims against the people of Porto Rico other than that provided by this act and those which are now specifically authorized by the Civil Code or by acts of the legislative assembly; provided, however, that all such actions shall be brought only in the insular district courts." Section 10 of act No. 76, approved April 13, 1916, Porto Rico Laws, 1916, p. 151.

"Process and all pleadings, notices and papers in connection with any action or proceeding against the people of Porto Rico shall be served upon the governor and the Attorney General in the manner provided by law." Section 13 of act No. 76, approved April 13, 1916.

Now, taking the view I have above, it is perhaps not essential to the case to pass upon the restriction of venue, and moreover this bill seeks the collection of no claim; but if the point be essential I would have to say I do not think the provision can prevail. The same law which gives the Porto Rican courts any authority at all establishes this court. This court is held by the Supreme Court of the United States not to be what is called a constitutional court, that is to say, one growing out of the judiciary provisions of the Constitution, but one growing out of the power of Congress over territories or a territory, as the case may be. Porto Rico not being an incorporated terri-

tory, I do not think that the decisions of the American courts, the Continental courts, as to what a state can do, are applicable; certainly not fully. To some extent they may be. There are decisions that a state can prescribe that as to certain matters it can be sued only in its own courts, as in such matters as taxes, which would tie up the machinery of the state itself. That has been decided in a number of cases in the United States Supreme Court. Murray v. Wilson Distilling Co. 213 U. S. 151, 53 L. ed. 742, 29 Sup. Ct. Rep. 458, where the court said (p. 172): "It is elementary that, even if a state has consented to be sued in its own courts by one of its creditors, a right would not exist in such creditor to sue the state in a court of the United States. Smith v. Reeves, 178 U. S. 436, 44 L. ed. 1140, 20 Sup. Ct. Rep. 919, and cases cited; Chandler v. Dix, 194 U. S. 590, 48 L. ed. 1129, 24 Sup. Ct. Rep. 766."

I take it that this is not applicable to Porto Rico. For Porto Rico is a creature of the United States, created by the Jones Act and earlier acts; and it would not have the power, if it should desire, to exclude the United States judiciary. If it is to be sued in its own courts, I take it that the provision would be widened to include this court. If there is any error in this, however, it will have to be corrected in some other tribunal. It has even been held in a late case by the Supreme Court of the United States, that a state law providing a suit by a foreign corporation or a suit brought by other proper party cannot be removed to the United States court is void; that it is unconstitutional. It is discriminating against Federal instrumentalities, and that cannot be permitted. Federal agencies can-

not be put to one side even by states. So that I think I have jurisdiction against the defendant Ruiz Soler.

5. As to whether it might or might not be a good plan to call in the people of Porto Rico, I pass no decision. That is not before me. The Attorney General of the island knows of the suit, for he has appeared specially. There was a case from this court in which the upper court held that the people of Porto Rico should be made a party, because their income was involved. Veitia v. Fortuna Estates, 153 C. C. A. 182, 240 Fed. 256. That came from the south side of the island, where certain water rights were involved. As presented to this court, it simply was a question between private interests, but the argument seems to have convinced the court above that it was not a question of grants already made, as in the Insular Dock Company Case, where the rights triable were rights which had been fully acquired and the government had no further interests. But in the case I am speaking of, the future income of the people of Porto Rico was involved, and therefore the people of Porto Rico should be made parties. Now, whether the interest of the People of Porto Rico in a health matter is of that character or not I do not decide. It might become important in a later stage of the case, but I think that I have jurisdiction so far until the point is raised that the people of Porto Rico should be called in.

6. Now, passing to the merits, not of the case, but the merits of the question of a preliminary injunction, the matter of tuberculosis is one of great public importance. Of that there is no question. And it is probably of greater importance in tropical countries than in any other countries. At all events, it seems to have taken a strong hold in tropical countries, and

in Porto Rico in particular. I do not mean that it is worse than in any other West Indian community, but that Porto Rico is an example. The reports of public authorities seem to show that it is a great evil, called the White Plague, elsewhere, however, as well as in Porto Rico; and it is perfectly true that it is a matter of great public importance. There is nothing else of greater public importance, in the way of health at least, than this question of tuberculosis. It has been taken up by private sources, but it now has come to be recognized as a public matter; and, as I understand it, it is in consequence of this that a hospital was established on the site of the cantonment which is now being erected, and that the urgency of the present case comes from the fact that that site has been taken by the United States government for Army purposes, and the defendant Ruiz Soler has therefore undertaken to purchase this site from defendant Hubbard out on the Carolina road. Temporarily the patients have been placed somewhere else, and it is of great importance to have the matter settled one way or the other.

What I am deciding now is merely preliminary. Is the establishment of this hospital a nuisance under the facts shown? It may not be a nuisance per se, because there has to be such a hospital somewhere. It cannot be said that it is something that must be abolished altogether. That is not the point. To change the expression a little bit, is it or not a nuisance per situation? That I take it is the exact point before me. The facts shown by the the affidavits are these. That the location selected, some 35 acres, which by agreement of the parties has been inspected by the judge of this court, is a slight hill facing the carretera in question and the drainage flowing backwards,

Scoville v. Soler.

that is, southwardly into a brook, the Creek San Anton I think it is, in one direction, and in the other flowing northwardly, irregularly, but still through the tract in question, which is at present a cane field, and passing under the carretera and emptying finally into an arm of the sea near by, but passing in the meantime near a packing house belonging to some of the plaintiffs, or at all events in which some of the plaintiffs are interested, and that one of the plaintiffs has property and is living to the east of this property. That another, Bacon, has property and lives to the west of this property and near by. Right near there is a settlement called, I believe, Sabana Llana, where four or five hundred Porto Ricans live, some of them workmen of the plaintiffs, Porto Ricans of the lower class, if it is proper to speak of any distinction of classes, working people at all events, who have their rights and apprehensions just as fully as anybody who lives in the Condado or Miramar. The contention of the complainants is that the hospital when erected will vitiate the water and air, besides the question of site and esthetics, to such an extent that it will be a nuisance under the circumstances. This, of course, is disputed by the defendants, and the court has to make up its mind, but not as to the final truth of the situation, because the whole case is not before me. Affidavits do not permit of cross-examination, and facts stated in affidavits may turn out on cross-examination to be entirely different. But still I have to determine on the affidavits before me for the purposes of this preliminary injunction.

The matter presents considerable difficulty. The commissioner of health believes that there will be not even any inconvenience to the neighbors. Dr. Lippitt, formerly in charge of sanitation, and a physician of great eminence, for whom the

X. Porto Rico.—21.

court has the highest respect, says that if properly managed this hospital can work no injury to anyone, and that in fact seems to be the mode of expression of the defendants' witnesses, —that if properly directed and managed, or something to that effect, there can be no injury. On the other hand, the complainants set up that the wind will carry the dry germs over to this village, that the drainage spoken of will carry the wet germs in solution past this packing house, rendering its extensive products unmarketable or certainly subject to suspicion in the states or wherever they go to. That the brook on the other side and the drain on the north side will vitiate the drinking water of cattle; that there are dairies in the neighborhood. And that the whole district will come under suspicion, and the property will be depreciated in value, and the whole neighborhood be condemned for residence purposes.

It is difficult to form in advance a satisfactory conclusion as to the facts. Light, however, may be thrown upon the situation by looking at what has been the truth as to this very hospital on its previous location, the present cantonment. There is evidence before me, and so far as I know it is uncontradicted, that property in the neighborhood of that hospital, which was smaller as I take it, certainly it was not so much in the public eye as the proposed one, has been depreciated by the presence of this hospital as much as 33 per cent; that rents have been affected. And, on the other hand, it is shown that as a residence district it has improved, more people moving there. I take it that the balance of probability—and that is all I can go on in this case—is that some such result would follow from the location of the hospital on the new site, and I am led to that conclusion by several considerations.

Scoville v. Soler.

As to the question of wind, that has not been much considered in the states, as to what germs can be carried by the wind. It has not been conclusive in any case. But it has a much greater persuasive power in Porto Rico. It is a matter of common knowledge that the Trade Wind prevails here nine or ten months out of the year, and that it is a steady breeze, sometimes almost a gale, from the East. And I think I may take judicial knowledge from having examined the property in the neighborhood, and perhaps I might say from having lived near the seashore, that odors and other matters of that sort are carried by this wind for several months out of the year for long distances, at least half a mile, I might say, and this practically continuously through the whole year; I think that the question of wind is one that requires much greater consideration down here than it would in the states.

There is another matter testified to by the superintendent of the municipal hospital, Dr. Goenaga. He says: "In all parts of the world there are undisciplined people, but more than anywhere (and this is a disagreeable fact) in Porto Rico, and consequently, no matter what a strict vigilance may be exercised of the disease, and no matter what thorough inspection may be maintained to prevent them from spitting on the floor, they will always do it. As we all know, the sun will destroy the germ, but, on the other side, it will contribute to spread said germ in the atmosphere by producing dust, and then comes the wind that carries the contaminated germ to all parts."

It follows, therefore, that it would be practically impossible to maintain a hospital of this character in Porto Rico in the same manner that it would be in the states or in France or in

Scoville v. Soler.

England, or in other northern communities. I do not think that it is necessary to confine this statement to Porto Rico; I do not want to be considered as doing so at all; for in all tropical countries, in the West Indies, health conditions are not the same as in more temperate climates. I think that great weight would have to be attached to the testimony of this physician, who I think is a Porto Rican and has lived here a long time. And the experience of the other hospital tends in the same direction.

On the whole, it seems to me that the balance of convenience would be against establishing this hospital at this place at this time. There are some public matters to be considered too. The hospital heretofore has not been apparently a very large one. It is proposed to make this one more extensive and beautify it. That is the impression I get from the evidence, but no details are placed before the court. In fact it is one of the defenses set up by defendant Ruiz Soler, that, as the health department has not formulated its plans, the court cannot say that its plans would be detrimental to anybody's health. That may be true, but this remains also true,—that the building of this edifice and its management from year to year depend entirely upon the interest which the appropriating department of the government may take in it. This case is not as if a man was establishing a hospital and endowing it forever. It is nothing of that kind. It is a matter which will depend upon appropriations from year to year, and neither the commissioner of health nor anyone else can guarantee that they will be sufficient, especially during the prevalence of a world war, unexampled in extent and sacrifices. Of course it is to be presumed that the people of Porto Rico will take care of that public insti-

Scoville v. Soler.

tution to the extent of their supposed ability, and I would not for a moment think otherwise; but still the result is a matter that cannot be guaranteed in the nature of things. It is due to the respect that one has for another department of the government to suppose that appropriations will be made; however, this is not a question of supposition, but a question of health and private rights, and there can be no guaranty on that sub- ject. It must be considered without any plans or any guaranty as to future maintenance, or anything of that kind; and there is ground for apprehension on the part of the complainants.

7. I will not now take up the question as to whether this is the best site, although the matter of other possible sites might be persuasive. Paducah v. Allen, 20 Ky. L. Rep. 1342, 49 S. W. 343. A decision on this might amount to controlling the discretion of the local authorities. No court has the power to do that, and this court has no wish to do it. Cases have been cited to me on the idea that this court can do nothing of any kind, because it would be interfering with the discretion of administrative officials. I do not think that that is a proper deduction. The main case cited is where tax money was sought to be used for a certain purpose, and the court held that it had no power to control the officials of the government to the extent of seeing that all would be done, or that certain things needing a long period of time would be carried out. Louisiana v. Jumel, 107 U. S. 711, 726, 27 L. ed. 448, 453, 2 Sup. Ct. Rep. 128. The present is not such a case at all. The decree in this case would not direct the commissioner of health to build a hospital and maintain it properly. It would be the other way; if the court agrees with the complainant the commissioner of health would not build the hospital, and that is the end of

the matter. There is no discretion about it. It would only end his power as to this particular site, and it would not control his discretion otherwise.

· Now, argument is made that there are much better sites possible, that the commissioner should go up in the hills. Many of them are uninhabited, but perhaps also inaccessible because uninhabited; and it is agreed he should locate the hospital there. I think it would be traveling outside of the record for the court to indicate anything of that sort. It may or may not be desirable from the point of view of the patients that this hospital be located near a town where they would have sewers and water and light and trolley lines so as to see their friends. All of that may be true. But in this particular case it seems that the location is unhappy from the point of view of the complainants for two reasons. In the first place, it is at the end of the inhabited suburbs of San Juan, or Rio Piedras, which is a continuation of San Juan. Going down that carretera, one observes that it is fairly well built up on each side until you come to this property,—there may be some gaps, but practically until you come to this property; and of course it would be a reason for locating it there, that it is uninhabited. There begin the cane fields and pine fields, which extend for a long distance, but by putting this hospital there, from the experience of the other, it would seem to follow that the authorities would condemn the extension of suburban property to stop at that point. The neighborhood is a place of homes right now. This site happens to be the very first place not so occupied. I think it would be going too far to say that it can and should be used for hospital purposes. If it had been half a mile or a mile further off, the point at all events would not be so strong.

Scoville v. Soler.

8. The argument is made on behalf of the defendant Hubbard, and made very strongly and pointedly, that this court has no power to restrain him from selling his property to anybody he wants to; that it is a constitutional right to handle your property as you please, within, of course, reasonable limits, and that he has a right to sell it to the people of Porto Rico or anybody else; and that the purchasers are to be held accountable, not for the purposes, but for the way in which they manage it. It is argued that this court must wait until the hospital is erected, or at all events until it is planned, before it can take any action, and in the meantime the trade should be allowed, or rather should not be interfered with, and that this court has no power to interfere. There is much strength in the argument. It has impressed the court very much, but I cannot yield to it as the case is now presented to me. If the trade had been consummated, that might be a different matter, but as it comes to me the facts show the defendants Hubbard have contracted to sell this property to the commissioner of health for a use, according to the facts presented to me now, which is a nuisance per situationem at least; and whatever might be the rule at common law,—I do not know that it would be different in the states,—I think that there can be no reasonable doubt as to how the matter should be handled under the modes of conveyance which are used in civil law; that is to say, where two parties must get together before a notary. It is one act, and if there is to be any prohibition at all it must be a prohibition of the whole act. I do not know how I could separate it. I do not know how I could say that the defendants Hubbard are permitted to sell this property to Ruiz Soler and that Ruiz Soler is not permitted to accept it. It would be carrying

analysis to an extreme and be sticking in the bark. The undisputed object of this purchase is to put up and operate a tuberculosis hospital. So, it appears to me that, if I am to do anything at all in the matter, I have to act on the whole case as it is presented to me now.

9. The rule as to matters which may or may not become nuisances is for the chancery court to refuse an injunction until the question has been settled by an action at law. Mohawk Bridge Co. v. Utica & S. R. Co. 6 Paige, 563. This, however, is not true where the thing in question is a nuisance per se, or where it is apparent that a nuisance will result. People v. Canal Bd. 55 N. Y. 390; Morgan v. Binghamton, 102 N. Y. 500, 7 N. E. 424; High, Inj. § 742; Wood, Nuisances, § 797. It is true that there is no necessary nuisance involved in the bare purchase of 35 acres of land, but it is alleged, and not denied, that the purchase is for the purpose of erecting a hospital which it is apparent will prove a nuisance. This being so, the project should be stopped at its inception, so that private property and health be not affected and public funds diverted to a useless investment which would probably prevent the purchase of a proper site.

This is not a case of ungrounded apprehensions as to sewers, like Vickers v. Durham, 132 N. C. 880, 44 S. E. 685; nor where the injury is merely possible, and public benefit preponderates over private inconvenience, like Dorsey v. Allen, 85 N. C. 358, 39 Am. Rep. 704. Each case must be judged by itself. Ross v. Butler, 19 N. J. Eq. 294, 97 Am. Dec. 654. And precedents in Illinois and northern climates are not satisfactory guides for tropical conditions. Hospitals are not prima facie or per se nuisances, but circumstances may make them such.

Scoville v. Soler.

Joyce, Inj. § 1668. What is provided for by direct legislation cannot ordinarily be considered malum per se (Frazer v. Chicago, 186 Ill. 480, 51 L.R.A. 306, 78 Am. St. Rep. 296, 57 N. E. 1055), but this does not apply to acts of officials claiming to act under such legislation; otherwise we would live not under laws, but under despotism. Rehabilitation of a pesthouse 3 miles from Baltimore has been enjoined. Baltimore v. Fairfield Improv. Co. 87 Md. 352, 40 L.R.A. 494, 67 Am. St. Rep. 344, 39 Atl. 1081. So, in the case of a tuberculosis sanatorium in a residential section of Seattle it was found that, although properly conducted, it depreciated the value of neighboring property, and therefore an injunction was granted against it. Everett v. Paschall, 61 Wash. 47, 31 L.R.A.(N.S.) 827, 111 Pac. 879, Ann. Cas. 1912B, 1128. This seems to resemble the case at bar in principle at least. How the facts here will result on the trial cannot be determined in advance, but enough seems probable to justify the court preventing the parties from proceeding further until the proof comes in.

The result is that the motion against the jurisdiction made by Ruiz Soler is denied. The motion to dismiss is denied, and the motion to grant a temporary injunction is granted. There would next come up upon that the question of bond. Whether the court is right or wrong, what the court does will affect one or more parties. There should be some bond to protect defendant Hubbard. I do not think it should be a large bond, because he has the land anyhow; there is only the question of profits on this particular sale. But as to the commissioner of health it might be a more serious matter. The decree of the court would prevent the building of the hospital at this site, and that would be the termination of the case, so that the question of bond

might make a difference there; but the facts throw little light on the amount involved in this aspect. I would be glad if the parties would agree upon the bond. If they cannot, I will fix it as best I know how. If they want to confer on the bond and make any recommendation I will be glad to carry it out.